UNITARY MISSION CHURCH OF LONG ISLAND, PETITIONER
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8268–79X.    Filed June 3, 1980.

*Sheridan Albert,* for the petitioner.
*Elizabeth D. DePriest,* for the respondent.

OPINION

TIETJENS, *Judge:* Respondent determined that petitioner is not exempt from Federal income tax under section 501(c)(3),[1] and that petitioner does not qualify as a church under section 170(b)(1)(A)(i). Petitioner has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428.[2]

The issues for our determination are: (1) Whether any part of petitioner's net earnings inure to the benefit of any private

---

[1] Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended.

[2] The prerequisites for declaratory judgment have been satisfied: petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted its administrative remedies, sec. 7428(b)(2); and petitioner filed its petition before the 91st day after respondent mailed his determination, sec. 7428(b)(3). See also Rule 210(c), Tax Court Rules of Practice and Procedure. The third prerequisite is conditioned on respondent's having sent notice of its determination by certified or registered mail. Although respondent's determination letter was not sent by certified or registered mail, petitioner filed its pleading on the 87th day after the date appearing on respondent's adverse determination letter.

shareholder or individual, thereby preventing petitioner from qualifying for exemption, under section 501(c)(3), from Federal income taxation, and (2) assuming petitioner is held to be exempt under section 501(c)(3), whether petitioner is a church within the meaning of sections 509(a)(1) and 170(b)(1)(A)(i), and therefore, not a private foundation.

The case was submitted on a stipulated administrative record under Rules 122 and 217, Tax Court Rules of Practice and Procedure. The stipulated record, which is assumed to be true for the purpose of this proceeding, is incorporated herein by reference.

Petitioner, organized in July 1974, is an unincorporated New York State association with its principal meeting place in Wantagh, N.Y. Petitioner has never filed an "Application for Recognition of Exemption" with the District Director, Brooklyn, N.Y.

In letters dated September 26, 1977, and December 7, 1977, the District Director notified petitioner that it would have to submit information to determine whether petitioner qualified as a church under section 1.511–2(a)(3)(ii), Income Tax Regs. By letter dated March 14, 1978, the Regional Commissioner notified petitioner that an examination of petitioner's books and records would be conducted to determine petitioner's initial or continuing qualification for exemption under seciton 501(c)(3). After this examination was conducted in the spring of 1978, the District Director notified petitioner that he was referring the case to the National Office for technical advice. Attached to this letter was a statement of facts and issues and a request for petitioner to respond and state the extent of its agreement with the statement. The issues listed in the statement were:

1. Whether organization qualifies as a church to which contributions are deductible under section 170(c)(2) of the Internal Revenue Code?

2. Alternatively, does the fact that an individual is assigning a substantial portion of his income from outside employment to the church to be used primarily to defray the operating expenses of the residence/church constitute inurement to the individual taxpayer's benefit?

3. If so, does this inurement indicate that the organization is not operated exclusively for religious or charitable purposes as required by section 501(c)(3) of the Internal Revenue Code?

Responding to this letter, Kenneth W. Bucher (hereinafter Kenneth), cofounder and trustee of petitioner, asserted, in a letter dated July 21, 1978, his disagreement with the statement

of facts and issues. He stated, "We have no substantial disagreement with such facts as were presented, but additional information is clearly necessary to present a complete explanation of our situation."

In a letter dated March 23, 1979, the District Director issued to petitioner a final adverse determination letter, stating:

Our recent examination of your books and records disclosed that your organization is not exempt under section 501(c)(3) of the Internal Revenue Code and further that you do not qualify as a church under section 170(b)(1)(A)(i) of the Code.

Contributions to your organization are not deductible under section 170 of the Code.

In his answer, respondent asserted the affirmative allegation that his determination was based on the inurement of church property to the private benefit of Kenneth. No reply was filed admitting or denying this allegation.

Petitioner's articles of incorporation name its three founders and trustees: Kenneth, G. Mara Bucher (Kenneth's wife), and Thomas D. Blackburn, Jr. Its articles further state that petitioner is organized exclusively for religious purposes; that the trustees shall be the ultimate authority for all ecclesiastical matters and have the power to ordain ministers; that no part of the net earnings of the church shall inure to the benefit of its members, trustees, officers, or related persons; that the church may pay reasonable compensation for services rendered or for property acquired; that the church may make payments and distributions in furtherance of its religious purposes; that carrying on propaganda or otherwise attempting to influence legislation shall not be a substantial part of the activities of the church; and that upon dissolution, remaining assets shall be distributed for religious purposes or to organizations exempt under section 501(c)(3).

Petitioner's theology is based on peace, salvation, and freedom within one's self and soul. Its basic tenet is the body of belief regarding that which is eternal, ultimate, ulterior, true, and good which is held in the achievement of the best life that is open to him. The sacraments it observes are:

Majority—Adulthood. The Acceptance of responsibility.
Marriage—A contracting for the sharing of lives.
Consecration—The dedication of person or property to sacred purposes.

Transformation—The changing of physicial materials to create something of greater utility and value.

Exchange—The voluntary exchange of values.

A minister of petitioner has performed a marriage ceremony. Sunday worship, which is led by Kenneth, consists of a sermon/topic presentation followed by an open discussion of the sermon/topic. Petitioner also holds Wednesday meetings for study and meditation. Although it presently has no Sunday school, petitioner says one is planned in the future.

Petitioner's three ministers are Thiel E. Geddes (hereinafter Geddes) of Long Beach, N.Y., ordained on July 7, 1975; George B. Lyons (hereinafter Lyons) of Jersey City, N.J., ordained on February 18, 1975; and Kenneth, ordained on July 1, 1974. While petitioner does not require candidates for its ministry to undergo formalized instruction, it requires them to take an oral exam given by the directors of the International Council of Unitary Mission Churches (hereinafter ICUMC).[3]

Petitioner's place of worship is located in the ground floor of the Buchers' home in Wantagh, N.Y. Petitioner did not answer respondent's question about how many members it has; respondent's letter containing a statement of facts indicates that petitioner has 11 members.

Petitioner received $140,000 in contributions for the years 1975 through 1977. Kenneth contributed approximately 74 percent, or $103,900, over these years as follows:

| | |
|---|---:|
| 1975 | $28,700 |
| 1976 | 40,200 |
| 1977 | 35,000 |

Approximately another 15 percent of petitioner's contributions came from its other two ministers, Geddes and Lyons, who in 1975 and 1976 contributed a total of $20,700 as follows:

| | | | |
|---|---|---|---:|
| 1975 | Lyons | | $13,000 |
| 1976 | Geddes | | 7,700 |

During the years 1975 through 1977, petitioner's expenses

---

[3]The International Council of Unitary Mission Churches (ICUMC) lists its directors as: Ray L. Walker, Nashville, Tenn.; Robert M. Dunn, Cleveland, Ohio; Thomas D. Blackburn, Jr., Bethpage, N.Y.; and Kenneth W. Bucher, Long Island, N.Y. There is no additional information in the record about the ICUMC and petitioner's relation to it.

amounted to $125,000. It paid "parsonages" to its ministers as follows: [4]

| Kenneth | | Lyons | | Geddes | |
|---|---|---|---|---|---|
| 1975...... | $13,600 | 1975..... | $12,350 | 1976......................... | $7,086 |
| 1976...... | 35,650 | 1976..... | 3,800 | 1977 (through Oct. 1) | 1,235 |
| 1977...... | 12,000 | | | | |

Petitioner has expended at least $22,000 for permanent improvements and maintenance of its "parsonage," the ground floor of the Buchers' house. More than $12,000 of this amount was spent for such permanent improvements as the construction of a fireplace, the installation of a sound system, the purchases of a piano, an organ, tables, chairs, a statue, and paintings. The remaining money was spent on painting, landscaping, carpeting, furniture, lighting, and general repairs.

Travel expenses were paid to the Buchers for the following trips:

1975........Ann Arbor, Mich..............Church conference
          Miami, Fla.....................Minister recruitment
1976........San Francisco, Calif..........Church conference/
                                          purchase artwork
          Nashville, Tenn................ICUMC meeting
1977........Toronto, Ontario..............Church recruitment/
                                          religious research
          Nashville, Tenn................ICUMC meeting

Two loans totaling $7,000 were made to Kenneth's secular employer and a minister and officer of ICUMC, Robert Dunn (hereinafter Dunn).

Kenneth is employed full time by Dunn Appraisal Co., as manager, and earns $60,000. Kenneth donated approximately the following percentage of his income to the church:

1975............................... 48 percent
1976............................... 68 percent
1977............................... 58 percent

Petitioner argues that since it meets the characteristics used by respondent to determine whether it is a church, respondent's determination that the parsonage allowances are too high is an

---

[4]Since Dec. 31, 1977, petitioner's only "parsonage" has been to Kenneth.

interference into church matters and is a violation of the First Amendment to the Constitution. Therefore, petitioner argues, it is entitled to exempt status. Respondent, by contrast, asserts that petitioner is not operated exclusively for exempt purposes because its net earnings inure to the benefit of its founders and other individuals. In addition, respondent contends that petitioner is a private foundation because it has failed to demonstrate that it is a church within the meaning of sections 509(a)(1) and 170(b)(1)(A)(i).

We agree with respondent that petitioner is not entitled to exemption under section 501(c)(3) because a part of its net earnings inures to the benefit of private shareholders or individuals.[5]

Respondent's final determination letter denies petitioner exempt status on the ground that it is not exempt under section 501(c)(3). Respondent concedes that under Rules 213(a)(2) and 217(c)(2)(ii), Tax Court Rules of Practice and Procedure, he has the burden of proof with respect to his assertion of private benefit, first raised in his answer, as a ground for denying petitioner exemption under section 501(c)(3).[6]

Section 501(a) provides an exemption from Federal income taxation for organizations described in section 501(c). In order to be exempt under section 501(c)(3), the organization must satisfy three conditions: (1) It must be organized and operated exclusively for an exempt purpose; (2) no part of its net earnings may inure to the benefit of any private shareholder or individual; and (3) no substantial part of its activities may include carrying on propaganda, otherwise attempting to influence legislation, or participating or intervening in any political campaign.[7]

Net earnings include more than net profits and may inure to

---

[5]Because we have held for respondent on the first issue, we need not consider the second issue of whether petitioner is a church within the meaning of secs. 509(a)(1) and 170(b)(1)(A)(i).

[6]We accept respondent's concession without commenting on whether the shift in burden was actually required under these facts. Regardless of who has the burden of proof in this case, however, we find the evidence clearly shows that a part of petitioner's net earnings inures to the benefit of private shareholders or individuals.

[7]We have previously commented that the separately stated private inurement prohibition is redundant to the requirement that an organization be operated exclusively for one or more exempt purpose since operating exclusively for an exempt purpose necessitates providing a public, and not private, benefit. See *Western Catholic Church v. Commissioner*, 73 T.C. 196, 209 n. 27 and cases cited therein, 213 (1979), on appeal (7th Cir., Jan. 14, 1980); sec. 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs.

an individual in more ways than in the distribution of dividends. *Founding Church of Scientology v. United States*, 188 Ct. Cl. 490, 497, 412 F.2d 1197, 1200 (1969), cert. denied 397 U.S. 1009 (1970); *Lowry Hospital Association v. Commissioner*, 66 T.C. 850, 857 (1976). The restriction placed in section 501(c)(3), moreover, requires that "no part" of an organization's net earnings inure to the benefit of a private shareholder or individual; therefore, the amount or extent of such benefit is not determinative. See *Founding Church of Scientology v. United States*, 188 Ct. Cl. at 500, 412 F.2d at 1202. A private shareholder or individual is a person having a personal and private interest in the activities of an organization. Sec. 1.501(a)–1(c), Income Tax Regs.

In his answer, respondent asserted that his denial of exemption under section 501(c)(3) was based on the inurement of church property to the private benefit of its trustee, Kenneth. Petitioner filed no reply to respondent's allegation. In its reply brief, petitioner states that it has always denied any inurement for the private benefit of its pastor, Kenneth. This assertion, however, cannot be considered a reply. Under Rule 213(b)(3), Tax Court Rules of Practice and Procedure, "Where a reply is not filed, the affirmative allegations in the answer will be deemed admitted."

Furthermore, there are sufficient facts in the administrative record to indicate private inurement to Kenneth and other individuals. For the years 1975 through 1977, respectively, Kenneth received parsonages of $13,600, $35,650, and $12,000. The services he performed included leading Sunday services and being available for pastoral counseling.[8] There is no explanation in the record of why his parsonage allowance more than doubled in 1976 and then was reduced to its lowest amount in 1977; there is no evidence in the record that any of his duties changed during these years. Lyons, another minister of petitioner, received parsonage allowances of $12,350 in 1975 and $3,800 in 1976. Geddes, the third minister of petitioner, received parsonage allowances of $7,086 in 1976 and $1,235 through October 1, 1977. There is no evidence in the record concerning these ministers' having performed any services for petitioner nor any explana-

---

[8]As Kenneth was employed full time in his secular job, it is unclear how many hours he was available for counseling. Also, there is nothing in the record to show that he actually did any pastoral counseling.

tion for the fluctuating amounts they received. Since December 31, 1977, only Kenneth has received a parsonage allowance and, again, there is nothing in the record to explain why petitioner's other two ministers no longer were receiving "parsonages" from petitioner.

While the payment of reasonable salaries does not indicate private benefit, the payment of excessive salaries does result in inurement of benefit. *Founding Church of Scientology v. United States*, 188 Ct. Cl. at 496, 412 F.2d at 1200; *Birmingham Business College, Inc. v. Commissioner*, 276 F.2d 476 (5th Cir. 1960), affg. a Memorandum Opinion of this Court. The question of resonableness of salaries is a question of fact. *Founding Church of Scientology v. United States*, 188 Ct. Cl. at 496, 412 F.2d at 1200. On the basis of the record, we find that all of the parsonage allowances paid to Lyons and Geddes and, at least, the parsonage allowance paid to Kenneth in 1976, were excessive.

Petitioner asserts that we may not inquire into the reasonableness of petitioner's parsonage allowances since to do so would violate the First Amendment to the Constitution. However, it is well settled that the First Amendment right to free exercise of religion is not absolute and may be subject to incidental and indirect burdens. *Johnson v. Robison*, 415 U.S. 361 (1974); *Gillette v. United States*, 401 U.S. 437 (1971); *Gen. Conf. of the Free Church v. Commissioner*, 71 T.C. 920, 930 (1979). The granting of an exemption to qualifying groups is a matter of legislative grace and not a constitutional right. As long as an exemption is denied without an inquiry into the merits of religious beliefs, the denial is constitutionally permissable.[9] *Parker v. Commissioner*, 365 F.2d 792 (8th Cir. 1966), cert. denied 385 U.S. 1026 (1967).

Kenneth and G. Mara Bucher, like the founder and his wife in *Founding Church of Scientology v. United States, supra,* are two

---

[9]The record demonstrates that respondent acted in an impartial manner in making his determination denying petitioner exempt status. Respondent has not questioned the veracity of petitioner's beliefs. Respondent's inquiry into the size of petitioner's congregation is relevant to an inquiry of the nature of petitioner's activities and to whether it was operated exclusively for religious purposes. *Western Catholic Church v. Commissioner, supra* at 210; *Bronner v. Commissioner*, 72 T.C. 368 (1979). Petitioner, moreover, has not shown that respondent's denial of exemption discriminates against petitioner in favor of similarly situated groups. See *Golden Rule Church Association v. Commissioner*, 41 T.C. 719 (1964).

of the three members of the organization's board of directors and control its financial decisions.[10] Besides controlling the determination of parsonage allowances for petitioner's ministers, including Kenneth, the Buchers controlled the decisions regarding reimbursement for their own travel expenses, the repairs and improvements to petitioner's parsonage located in their house, and the two loans made to Kenneth's secular employer, Dunn.

Although control of financial decisions by individuals who appear to benefit personally from certain expenditures does not necessarily indicate inurement of benefit to private individuals, those factors coupled with little or no facts in the administrative record to indicate the reasonableness and appropriateness of the expenses are sufficient to convince us that there is indeed prohibitive private inurement.

Specifically, here, the Buchers were reimbursed expenses for six trips; yet, the record contains minutes of only one ICUMC meeting on one of these trips. Similarly, little is known about the two loans totaling $7,000 made to Dunn, Kenneth's secular employer. There is no evidence in the record of any fixed criteria used for determining the beneficiary of these loans or of the purpose of these grants; likewise, there is no evidence that any interest was charged. We can only conclude, therefore, that private individuals benefited from this loan arrangement. As the Court of Claims stated in *Founding Church of Scientology v. United States*, 188 Ct. Cl. at 499, 412 F.2d at 1202, "Indeed, the very existence of a private source of loan credit from an organization's earnings may itself amount to inurement of benefit." See *Western Catholic Church v. Commissioner*, 73 T.C. 196, 211 (1979), on appeal (7th Cir., Jan. 14, 1980); *Church in Boston v. Commissioner*, 71 T.C. 102, 106–107 (1978).

Finally, petitioner argues that the record is nebulous on the issue of private benefit and that a hearing should be held to explain the facts. According to Rule 217(a), Tax Court Rules of Practice and Procedure, however, we must decide this action for declaratory judgment on the basis of the administrative record.

---

[10]Although petitioner maintains a separate bank account, Kenneth and his wife control decisions on its expenditures. That petitioner does not directly pay the personal expenses of the Buchers, therefore, does not prevent their receiving private benefit from their decisions on financial matters of petitioner.

516

No new evidence may be introduced without the showing of good cause. Petitioner has not shown good cause here. Before respondent issued its final determination letter, petitioner was repeatedly given the opportunity to present facts which would show it qualified for exemption under section 501(c)(3).

*Decision will be entered for the respondent.*