GEORGE W. MURPHY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Murphy v. Commissioner
Docket No. 15559-81.
United States Tax Court
T.C. Memo 1983-59; 1983 Tax Ct. Memo LEXIS 726; 45 T.C.M. (CCH) 621; T.C.M. (RIA) 83059; February 1, 1983. George W. Murphy, pro se. Carmen J. Santa Maria, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a)
1977
$717
$36
1978
$565
$28
The issue for decision is whether petitioner is entitled to deductions under section 170(a) and (c)(2) [1] for contributions to an alleged organization named the Bend Universal Life Church. To establish that he is entitled to the claimed contributions deductions, petitioner has the burden of proving that the Bend Universal Life Church (BULC) was, during 1977 and 1978, an organization organized and operated exclusively for religious purposes, no part of the net earnings of which inured to the benefit of any private individual within the meaning of section 170(a)(1), (c)(2)(B) and (C). [2]Welch v. Helvering,290 U.S. 111 (1933). *728 Petitioner has not carried his burden of proof. Petitioner, a resident of Redmond, Oregon, when he filed his petition, is a retired, former teacher of aeronautical electrical systems and theory; he taught at Northrup Institute University. On April 18, 1975, he obtained a certificate from the Universal Life Church, Inc., Modesto, California (sometimes the Modesto organization), that he had been ordained. On the same date, he received from the Modesto organization, which has been ruled to be tax exempt, a certificate that a congregation had been started at Redmond, Oregon. The certificate *729 stated, in part: Neither party to this agreement is the general agent of the other. The Universal Life Church, Inc. issues this certificate in consideration of the signatories' promise that they will indemnify, save harmless, and defend the Universal Life Church, Inc. from all liability from damages to persons or property in any suit at law arising out of this agreement. By this agreement, the Universal Life Church, Inc. hereby authorizes this congregation to open a bank account, or accounts with any other financial institutions, in the name of the Universal Life Church, Inc.
The headquarters of BULC was petitioner's personal residence. During 1977 and 1978, a bank account was maintained at the United States National Bank in the name of BULC. Petitioner deposited into that account checks drawn on his personal bank account, in the total amount of $5,285 in 1977 and $4,240 in 1978. [3] Petitioner was authorized to draw checks on the BULC bank account. *730 Petitioner introduced into evidence a letter dated March 2, 1982, purportedly signed by Robert E. Imbeau on the letterhead of Universal Life Church, Inc., Modesto, California, which states, among other things, "We have informed Mr. Murphy that the questions asked about the Church and its operations are privileged and inviolate and cannot be answered except byt [sic] the Board of Directors of the Universal Life Church, Inc., in Modesto, California." Citing this letter, petitioner pulled a curtain of secrecy over virtually all information relating to BULC. He informed the Court that he was not authorized to answer any questions about BULC's organization, its "operations, procedures and internal affairs"; the circumstances in which he obtained his certification of ordination; the circumstances in which he obtained the charter for BULC; any information on the identity of the group composing BULC; what happened to the money he deposited into BULC's bank account; the operations carried on by BULC; who signed the checks on the account maintained in BULC's name; who, in addition to himself, had authority to draw checks on that account; or who, in addition to himself, were the officers *731 or governing body of BULC. In essence, petitioner has established only that he obtained from the Universal Life Church, Inc., Modesto, California, credentials as a minister and a certificate that a congregation had been formed at Redmond, Oregon, and that the Modesto organization has been ruled to be tax exempt. He has introduced no evidence whatever to show that the BULC was operated exclusively for religious purposes within the meaning of section 170(a) and 170(c)(2)(B). It does not suffice for petitioner to assure the Court, by a general statement, that BULC's operations were religious in nature. Without specific evidence, the Court has no way of determining whether or not BULC's operations were exclusively religious, and the law is settled that the presence of a "sinble * * * [nonexempt] purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly * * * [exempt] purposes." Better Business Bureau v. United States,326 U.S. 279, 283 (1945); sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. The mere fact that the Modesto organization issued a "charter" to BULC does not establish that the purposes of its operations *732 were religious in character. Nor does the fact that the Modesto organization has been ruled to be tax exempt entitle petitioner to deductions for contributions to BULC. [4]
*733 Moreover, petitioner has failed to show that at least part of the "earnings" (i.e., in the case of a church, receipts) of BULC did not inure to the benefit of private individuals. His refusal to offer any evidence as to what became of the money he deposited into BULC's account, who signed checks on the account, and other information with respect to the proceeds of the account renders the Court unable to find that part of the proceeds of that account were not used for petitioner's personal benefit within the meaning of section 170(c)(2)(B) and (C). If anyone other than petitioner participated in BULC's activities, it is clear that the group was very small. This domination of BULC by a small group "may not necessarily disqualify it for exemption," but "it provides an obvious opportunity for abuse of the claimed tax-exempt status. It calls for open and candid disclosure of all facts bearing upon * * * [BULC's] organization, operations, and finances so that the Court, should it uphold the claimed exemption, can be assured that it is not sanctioning an abuse of the revenue laws." Bubbling Well Church v. Commissioner,74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981). *734 Petitioner refused to make such disclosure. The logical inference is that the facts, if disclosed, would show that petitioner fails to meet the section 170(a), (c)(2)(B) and (C) requirements. See Founding Church of Scientology v. United States,188 Ct. Cl. 490, 498, 412 F.2d 1197, 1201 (1969); Parker v. Commissioner,365 F.2d 792, 799 (8th Cir. 1966), affg. a Memorandum Opinion of this Court; Bubbling Well Church v. Commissioner,supra.
We are left with the firm conviction that BULC was used predominantly for personal purposes and that any religious activities connected with it were of minimal significance. It did not meet the section 170(a), (c)(2)(B) and (C) requirements, and petitioner is not entitled to the claimed deductions. Cf. Basic Bible Church v. Commissioner,74 T.C. 846 (1980); Bubbling Well Church v. Commissioner,supra;Unitary Mission Church v. Commissioner,74 T.C. 507 (1980), affd. 647 F.2d 163 (2d Cir. 1981). There remains the issue as to the applicability of the section 6653(a) [5] additions to tax. As in the case of the exemption issue, *735 petitioner has the burden of proof, and he offered no testimony or other evidence to show that his underpayment of tax was not due to negligence or intentional disregard of the revenue laws. On that ground alone the addition to tax must be sustained. [6]
Decision will be entered for the respondent. *736 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.↩
2. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General Rule.--There shall be allowed as a deduction any charitable contribution * * * (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- (2) A corporation, trust, or community chest, fund, or foundation-- (B) organized and operated exclusively for religious * * * purposes * * *; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * *↩
3. Petitioner offered in evidence two printed statements on letterheads of the Universal Life Church, Inc., Modesto, California, addressed to petitioner acknowledging contributions in stated amounts to the Modesto organization. They were not admitted as evidence because of their hearsay character. Had they been admitted, they would have carried no weight. Petitioner admitted that the contributions referred to therein were made to BULC, not the Modesto organization. The careful wording of the statements suggest they were designed to mislead.↩
4. In Riemers v. Commissioner,T.C. Memo. 1981-456, this Court stated: In Universal Life Church, Inc. v. United States,372 F. Supp. 770 (E.D. Cal. 1974), the Universal Life Church, Inc. of Modesto, California was held to be exempt under section 501(c)(3). However, that holding applied only to the individual parent church there in issue; it was not a group exemption * * * Therefore, the Valhalla Universal Life Church is not included in the exemption granted to the Universal Life Church, Inc. of Modesto, California, and its status as an organization to which deductible contributions can be made must be determined separately. See also Kellman v. Commissioner,T.C. Memo. 1981-615; Brown v. Commissioner,T.C. Memo. 1980-553; United States v. Toy National Bank, an unreported case ( N.D. Iowa 1979, 43 AFTR 2d 79-954, 79-1 USTC par. 9344); Schilberg v. Commissioner,T.C. Memo. 1982-336; Hall v. Commissioner,T.C. Memo. 1982-337↩.
5. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. ↩
6. For other cases in which sec. 6653(a) additions to tax were sustained where persons had set up personal churches and claimed charitable deductions for contributions to such organizations, see e.g., Daly, Jr. v. Commissioner,T.C.. Memo. 1982-59; McElhannon v. Commissioner,T.C. Memo. 1982-196; Schilberg v. Commissioner,T.C. Memo. 1982-336; Hall v. Commissioner,T.C. Memo. 1982-337↩.