UNIVERSAL LIFE CHURCH, INC. (FULL CIRCLE), PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21925–81X.     Filed August 30, 1984.

Sherwood W. Mathis (an officer), for the petitioner.
*Judith M. Picken*, for the respondent.

## OPINION

PANUTHOS, *Special Trial Judge*: This is an action for declaratory judgment pursuant to section 7428[1] and Rule 211.[2] This matter has been decided pursuant to the provisions of section 7456(d) and Rule 218(a).

---

[1] All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise indicated.

[2] All Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner Universal Life Church, Inc. (Full Circle) (hereinafter Full Circle), through Sherwood W. Mathis,[3] filed a petition for declaratory judgment herein on August 24, 1981, after respondent determined that Full Circle was not an organization within the meaning of section 501(c)(3). The issues for decision are: (1) Whether the Tax Court has jurisdiction to consider this matter where petitioner did not file an Application for Recognition of Exemption (Form 1023); and (2) if jurisdiction exists, whether respondent correctly determined that Full Circle is not entitled to exempt status.

This case was submitted for decision on the stipulated administrative record pursuant to Rule 217.[4] The administrative record is incorporated herein by this reference.

Full Circle received a charter from the Universal Life Church, Inc., of Modesto, CA[5] (hereinafter ULC, Modesto), on May 19, 1975.

The administrative record does not reveal any organizational documents evidencing the purpose of Full Circle other than the charter agreement with ULC, Modesto, which provided as follows:

1. This church agrees to abide by the Corporate Laws of the State, and if it ceases to be active all properties, money, and records it has reverts to International Headquarters.

2. That this church will report quarterly the services held, including special meetings, attendance, income, disbursements, and balance. A record-keeping fee of $2.00 (two dollars) per month will be required with the report.

3. This church must have a governing body of at least three people: pastor, secretary, and treasurer. This agreement must be signed by the three, individually. To notify headquarters immediately of any change of these officers.

---

[3]Sherwood W. Mathis is the founder and minister of Full Circle.

[4]On Dec. 3, 1982, respondent filed a "Motion for Order to Show Cause Why Case Should Not Be Submitted on the Basis of the Administrative Record Filed March 3, 1982," which was granted on Dec. 14, 1982. Petitioner was given until Apr. 28, 1983, to show cause. On May 2, 1983, petitioner forwarded to the Court a document entitled "Motion to Dismiss for Lack of Jurisdiction," which the Court filed as "Response to Court's Order to Show Cause." On May 13, 1983, the show cause order was calendared for hearing at the June 8, 1983, Motions Session, and on the latter date, the show cause order was deemed absolute and the case submitted on the administrative record.

[5]The Universal Life Church of Modesto was granted exempt status on May 5, 1975, based on the decision in *Universal Life Church v. United States*, 372 F. Supp. 770 (E.D. Cal. 1974).

4. This church is subject to cancellation if any of the above laws and rules are broken.

> Pastor (S) Sherwood W. Mathis
> Secretary (S) James R. Dawson
> Treasurer (S) LaVonne E. Mathis

5. If this church abides by the above laws and rules, we, at Church Headquarters, agree to furnish you with a non-profit tax status. Corporate number of State _____. The Federal tax-exempt number with the Internal Revenue Service is 94–1599959.

> (S) Kirby J. Hensley
> REV. KIRBY J. HENSLEY, *President*

Please refer to your *charter number* when making your reports or writing about your church. Please retain one copy of this agreement for your files. Send all correspondence to Universal Life Church, Inc., 601 Third Street, Modesto, CA 95351, USA.

There is nothing in the administrative record which shows that Full Circle has a regular place of worship, holds regular worship services, or performs any religious functions.

Checking and savings accounts were opened in the name of Full Circle on August 30, 1975, at the Toy National Bank, Sioux City, IA. Sherwood and LaVonne Mathis were the sole signatories. The checking account was opened by Sherwood Mathis by an initial deposit of $1,100. Deposits totaling $55,123.56 were made to the Full Circle checking account during the period August 30, 1975, through December 31, 1976. All but $5,000 of the total amount were deposits of checks made payable to Sherwood Mathis. The $5,000 deposit on August 25, 1976, represents a transfer from Full Circle's savings account to its checking account.

During this period, $15,926.11 was deposited to Full Circle's savings account. Many of the deposits came from Sherwood Mathis.

The expenditures by Full Circle for the period August 30, 1975, through December 31, 1976, from its checking account are categorized as follows:[6]

| Category of payee | Number of checks issued | Amount paid |
|---|---|---|
| Universal Life Church | 3 | $48.00 |
| Individuals: | | |
| Sherwood Mathis | 7 | 9,916.00 |

---

[6]It is noted that petitioner did not voluntarily provide this information. The Commissioner obtained the bank records by means of an administrative summons.

| Category of payee | Number of checks issued | Amount paid |
|---|---|---|
| LaVonne Mathis | 1 | $500.00 |
| Harold and Verona Mathis | 3 | 1,500.00 |
| Insurance | 25 | 2,703.17 |
| Credit card companies | 31 | 4,684.69 |
| Utilities | 24 | 1,513.62 |
| Department stores | 20 | 1,581.97 |
| Food | 10 | 793.96 |
| Magazine, newspaper, and books | 9 | 75.90 |
| Books, book clubs | 20 | 184.10 |
| Newspapers, miscellaneous publications | 13 | 279.92 |
| Guns, gun-related expenditures | 3 | 34.50 |
| Postage | 9 | 101.85 |
| Other major payments: | | |
| Ken (or Kent) Argo | 9 | 1,971.62 |
| Beckman Realty | 3 | [7]11,000.00 |
| Dick & Jerry's Soft Water Service | 2 | 4,920.72 |
| Overhead Door Co. | 1 | 237.03 |
| Williams Television Sales & Service | 1 | 102.95 |

On May 28, 1981, respondent sent petitioner a final adverse determination letter after conducting an examination of Full Circle. Respondent concluded that:

1. You are not an "organization" within the meaning of Sections 501(a) and 501(c)(3) of the Internal Revenue Code.

2. You are not, nor have you ever been, "organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary or educational purposes."

3. A portion of your net earnings has inured to the benefit of private individuals.

Respondent informed petitioner that the determination could be contested by filing a petition for declaratory judgment, which petitioner did in this Court on August 24, 1981.

The focus of petitioner's position with respect to the jurisdictional issue as well as alleged violations of the Administrative

---

[7]A real estate contract filed Sept. 2, 1976, shows that approximately 20 acres of land was acquired by Full Circle with Sherwood and LaVonne Mathis as trustees. The property was paid for by three checks totaling $11,000 to Beckman Realty and signed by LaVonne E. Mathis.

Procedure Act and the exempt status issue is that Full Circle is part of the ULC, Modesto. Petitioner's argument follows that since Full Circle comes within the ULC, Modesto, exemption, there is no need to file an application for exemption (Form 1023) and all inquiries made by the Commissioner of Full Circle were properly forwarded to ULC, Modesto.

Other than the unsupported assertions of petitioner, there is nothing in the record which would justify a finding that Full Circle is a part of ULC, Modesto.[8]

The record contains several letters from both petitioner and individuals associated with the ULC, Modesto, which urge the Internal Revenue Service to recognize Full Circle as part of, or a branch of, the ULC, Modesto, and in turn to extend the tax-exempt status of ULC, Modesto, to Full Circle. Petitioner was unable to or unwilling to present any evidence regarding the organizational relationship between Full Circle and ULC, Modesto, other than the charter granted Full Circle and the self-serving assertions of both the ULC, Modesto, and the petitioner. *Basic Bible Church v. Commissioner*, 74 T.C. 846, 855 (1980).[9]

## *Jurisdiction*

Petitioner asserts that this Court lacks jurisdiction in the present action because the parties have failed to exhaust their administrative remedies. Petitioner argues that its failure to file a Form 1023, Application for Recognition of Exemption (application) precludes this Court from exercising jurisdiction because the requirements of section 7428(b)(2) have not been met;[10] that is, it has failed to take an administrative step

---

[8]It is noted that petitioner initially captioned its request for declaratory judgment in the names of Universal Life Church Inc., and Universal Life Church, Inc. (Full Circle), and Sherwood W. Mathis. By order dated Mar. 16, 1982, we granted respondent's motion to dismiss for lack of jurisdiction as to Universal Life Church, Inc., and Sherwood W. Mathis, and to change caption. As we stated in said order, there is no showing in the record that the exempt status of any organization other than Universal Life Church, Inc. (Full Circle), is in issue herein, and the only final adverse determination letter in the record from which this Court could derive jurisdiction was issued to Universal Life Church, Inc. (Full Circle).

[9]See *Reimers v. Commissioner*, T.C. Memo. 1981–456; *Kellman v. Commissioner*, T.C. Memo. 1981–615. There is nothing in the record which would lead to a finding that Full Circle is under the management or control of ULC, Modesto, or that there is any mutual obligation for debts or contracts.

[10]SEC. 7428(b). LIMITATIONS.

(1) * * *

(2) EXHAUSTION OF ADMINISTRATIVE REMEDIES.—A declaratory judgment or decree under this

available to it and has therefore not exhausted all of its administrative remedies.

Respondent, on the other hand, argues that under the circumstances of this case, filing an application is not a jurisdictional prerequisite under section 7428(b)(2). Rather, this section limits the circumstances under which an organization may petition for declaratory relief. These limitations are, among other things, that the administrative remedies available have been availed of, and have resulted in, an adverse determination.

We believe respondent's position to be correct.

Section 508(c)[11] exempts various organizations, including churches, from the notification requirements of section 508(a).[12] Thus, while most organizations claiming tax-exempt status under section 501(c)(3) must inform the Commissioner of their application for exempt status (employing Form 1023) churches need not make such a notification. Failure to so notify the Commissioner results in disallowance of exempt status for those organizations not within the safe harbor provided by section 508(c). Churches which are within the safe harbor, however, need not notify the Commissioner to retain their exempt status.

The safe harbor provided does not, however, prevent the Commissioner from otherwise examining an organization which claims the protection of section 508(c). Section 6033(a)(2)(A)(i) exempts churches from filing income tax returns. Like section 508(c), it provides a safe harbor for certain qualifying organizations, including churches. The regula-

---

section shall not be issued in any proceeding unless the Tax Court, the Claims Court, or the district court of the United States for the District of Columbia determines that the organization involved has exhausted administrative remedies available to it within the Internal Revenue Service. An organization requesting the determination of an issue referred to in subsection (a)(1) shall be deemed to have exhausted its administrative remedies with respect to a failure by the Secretary to make a determination with respect to such issue at the expiration of 270 days after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination.

[11]SEC 508(c). EXCEPTIONS.—

    (1) MANDATORY EXCEPTIONS.—Subsections (a) and (b) shall not apply to—

        (A) churches, their integrated auxiliaries, and conventions or associations of churches, or

[12]SEC. 508. SPECIAL RULES WITH RESPECT TO SECTION 501(c)(3) ORGANIZATIONS.

(a) NEW ORGANIZATIONS MUST NOTIFY SECRETARY THAT THEY ARE APPLYING FOR RECOGNITION OF SECTION 501(C)(3) STATUS.—Except as provided in subsection (c), an organization organized after October 9, 1969, shall not be treated as an organization described in section 501(c)(3)—

    (1) unless it has given notice to the Secretary, in such manner as the Secretary may by regulations prescribe, that it is applying for recognition of such status, or * * *

tions[13] under section 6033 make it clear that the powers of the Commissioner, through the District Director and Service Center Directors, are in no way impaired by operation of that section. That the Commissioner has broad authority to examine taxpayers is unquestioned. *United States v. El Paso Co.*, 682 F.2d 530, 544 (5th Cir. 1982).

A straightforward reading of the relevant Code provisions makes it clear that, with regard to organizations claiming church status, the filing of an application for exemption is not a required administrative step. It follows that filing an application (Form 1023) is not a prerequisite to this Court's exercise of jurisdiction.

Both parties point to the legislative history of section 7428 in support of their respective points. While we do not think it necessary to look behind the statute, we note that exhaustion of administrative remedies means an "organization must satisfy all appropriate procedural requirements of the Service."[14] The Internal Revenue Service could not, in light of section 508(c)(1)(A), impose, as an administrative requirement on an organization claiming church status, the filing of an application for exempt status.[15]

We note that we have, on prior occasions, considered declaratory judgment actions under section 7428 and have, after specifically noting that an application had not been filed, gone on to address the substantive merits of the declaratory judgment action. *Unitary Mission Church v. Commissioner*, 74 T.C. 507, 508 (1980).[16]

---

[13]Secs. 1.6033–2(g)(2) and 1.6033–2(h)(2), Income Tax Regs.

[14]H. Rept. 94–658 (1975), 1976–3 C.B. (Vol.2) 701, 979; S. Rept. 94–938 (1976), 1976–3 C.B. (Vol.3) 49, 628.

[15]*American New Covenant Church v. Commissioner*, 74 T.C. 293 (1980), is not to the contrary. That case involved two separate organizations, only one of which had received a determination letter from respondent. The Court held that the second organization, American New Covenant Church, had no standing to bring a declaratory judgment action with respect to the exempt status of the first organization (to which respondent had issued a final adverse determination letter). The Court further held that it had no jurisdiction to make a declaration as to the tax-exempt status of American New Covenant Church. The Court did not adopt a requirement that an application for determination of exempt status be filed by an organization claiming exempt status as a church, but rather held that petitioner, by failing to submit an application in response to the Service's request, had failed to comply with a reasonable request to supply necessary information. The Court held that under these circumstances, the Internal Revenue Service may decline to make a determination, and that petitioner, which had failed to respond to the request for information and had not received any determination letter, had failed to exhaust its administrative remedies. 74 T.C. at 304.

[16]See *Basic Bible Church of America, Auxiliary Chapter 11004 v. Commissioner*, T.C. Memo. 1983–287; *Truth Tabernacle v. Commissioner*, T.C. Memo. 1981–214.

The failure of Full Circle to respond to inquiries or participate in any meaningful way in an examination of its status cannot further serve in the present action as the basis for petitioner's asserting a failure to exhaust its administrative remedies. On the record before us, we conclude that respondent has followed all the administrative procedures he normally employs and that petitioner exhausted its administrative remedies within the meaning of section 7428(b)(2).[17]

Accordingly, we find that this Court has jurisdiction to address the substantive issue raised by the petition for declaratory judgment.

### Administrative Procedure Act

Petitioner contends that respondent's actions do not comply with the requirements of the Administrative Procedure Act (A.P.A.), 5 U.S.C. sec. 500, et seq. (1982). Petitioner asserts that respondent failed to properly discuss "any of his allegations with the Universal Life Church" and that it has therefore, by operation of law, conceded those issues not "properly" addressed.

Respondent, on the other hand, argues that both factually and legally petitioner's position is meritless.

The basis for petitioner's argument that respondent failed to properly discuss his "allegations" with the ULC, Modesto, is rooted in petitioner's insistence that the ULC, Modesto, not Full Circle, is the proper party for respondent to deal with. As we have already noted, there is nothing of sufficient substance in the record to suggest that Full Circle is legally connected with ULC, Modesto. Because petitioner is an organization distinct from the ULC, Modesto, it must prove that it independently qualifies for exempt status, and evidence of, or reliance on, the ULC, Modesto's status is irrelevant in determining Full Circle's status. *Basic Bible Church v. Commissioner, supra* at 856.

We are satisfied after a careful review of the administrative record that the respondent has not violated the provisions of

---

[17] We note that in *Gladstone Foundation v. Commissioner*, 77 T.C. 221, 232 (1981), we observed with approval respondent's position that "once petitioner has received a final adverse determination letter, without the filing of a 'request for a new determination,' its remedies will be exhausted."

the Administrative Procedure Act, 5 U.S.C. sec. 554(b)(3) or (c).[18] It is petitioner who refused to communicate with the respondent in a reasonable and meaningful way. The record reveals that respondent made all normal and reasonable efforts to give notice to Full Circle of the action to be taken. Full Circle declined to present information to respondent. Based on this conclusion, we do not need to discuss the applicability of the A.P.A. to these proceedings.[19]

### Exempt Status

In the recent case of *Church of Ethereal Joy v. Commissioner*, 83 T.C. 20 (1984), we discussed the requisites for exempt status as follows:

To qualify for exemptions under section 501(c)(3), petitioner has the burden of showing (1) that it is organized and operated exclusively for religious or charitable purposes, (2) that no part of its earnings inures to the benefit of a private individual, and (3) that no substantial part of its activities consists of the dissemination of propaganda or otherwise attempting to influence legislation or engaging in political activity. Sec. 1.501(c)(3)–1, Income Tax Regs. [83 T.C. at 21, fn. ref. omitted.]

The burden of proof in a petition for declaratory judgment is on petitioner. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488 (1977); *National Association of American Churches v. Commissioner*, 82 T.C. 18 (1984); Rule 217(c)(2).

Respondent's determination must be based on the facts appearing in the administrative record. *Church in Boston v. Commissioner*, 71 T.C. 102, 105–106 (1978). Rule 210(b)(11) defines the administrative record as including all the docu-

---

[18]5 U.S.C. sec. 554(b). Persons entitled to notice of an agency hearing shall be timely informed of—

\*    \*    \*    \*    \*    \*    \*

(3) the matters of fact and law asserted.
(c) The agency shall give all interested parties opportunity for—
(1) The submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment when time, the nature of the proceeding, and the public interest permit; \* \* \*

[19]On brief, respondent takes the position that the A.P.A. provisions were not applicable to this matter. Respondent looks to A.P.A., 5 U.S.C. sec. 554(a)(1) (1982), which provides that the section does not apply where "a matter [is] subject to a subsequent trial of the law and facts de novo in a court." While we do not need to decide this question, we note that we have previously stated in another context that a declaratory judgment proceeding is not a trial de novo since it is based on the administrative record. *Houston Lawyer Referral Service v. Commissioner*, 69 T.C. 570, 573 (1978); *Church in Boston v. Commissioner*, 71 T.C. 102, 105–106 (1978).

ments submitted to the Internal Revenue Service, including correspondence, relevant returns, and the organizational documentation of the organization petitioning the Court.

Not only has petitioner not sustained its burden of proof, but the record before us discloses several factors that support respondent's determination. One such exhibit is a bank record of more than 300 checks written on a checking account held in Full Circle's name. Most, if not all, of the expenses for which checks were written appear to relate to expenses usually associated with individual needs or expenses. The schedule of payments from Full Circle's checking account for items such as insurance, utilities, food, credit card payments, department store purchases, etc., appear to be for normal subsistence. See *Basic Bible Church v. Commissioner, supra* at 857; *Bubbling Well Church of Universal Love, Inc. v. Commissioner,* 74 T.C. 531, 536 (1980), affd. 670 F.2d 104 (9th Cir. 1981). *Church of Ethereal Joy v. Commissioner, supra.* In addition, payments to Sherwood Mathis in 1975 and 1976 in ·excess of $9,000 were made by Full Circle. Mr. Mathis was one of the signatories to Full Circle's checking account.

While some of the payments are for goods or services that might be incurred by a church, nothing in the record reflects any effort on petitioner's part to substantiate, either to respondent or this Court, the relationship of the expenditures to the organization. We believe that the bank records support respondent's determination that Full Circle's money were spent for the benefit of, and personally controlled by, Sherwood Mathis. See *Davis v. Commissioner,* 81 T.C. 806, 818 (1983).

In addition, petitioner has failed to show that it was engaged in an exempt activity. It is incumbent on petitioner to establish that it is engaged in activities entitling it to exempt status. *Church in Boston v. Commissioner, supra* at 106. In this case, petitioner has failed to produce any evidence tending to show that it was in fact engaged in such activity. Quite the contrary, the record suggests that petitioner was a mere shell, a conduit through which Sherwood Mathis attempted to relieve himself of tax liability by having Full Circle, as an "exempt organization," support all of his personal expenses on . the ground that he was its "minister." Such a transparent sham will not stand even the most cursory analysis.

Finally, as we have noted above, there is little in the record establishing Full Circle's organizational basis. But for the charter received from the ULC, Modesto, there is nothing more than petitioner's bare and self-serving assertions that Full Circle was in fact a church.

On the record before us, we conclude that respondent's determination with respect to Full Circle is fully supported by the record. Petitioner has made no effort to meet its burden of showing its entitlement to exempt status. Accordingly, respondent's determination is sustained.

*Decision will be entered for the respondent.*