SHELTON WORDEN RIGGS, JR. AND ROBERTA ROSE RIGGS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Riggs v. Commissioner
Docket No. 9651-84.
United States Tax Court
T.C. Memo 1986-317; 1986 Tax Ct. Memo LEXIS 291; 51 T.C.M. (CCH) 1566; T.C.M. (RIA) 86317; July 28, 1986. *291 Held, Ps may not claim a charitable contribution deduction for certain amounts contributed to the First Church of Theophysics, a local chapter of the Universal Life Church, Inc., of Modesto, California. Held further, additions to tax under section 6653(a)(1), I.R.C. 1954, and section 6653(a)(2), I.R.C. 1954, sustained. Held further, damages under section 6673, I.R.C. 1954, awarded to the United States. Shelton Worden Riggs, Jr. and Roberta Rose Riggs, pro se. Catherine L. Campbell, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency in and additions to petitioners' 1981 Federal income tax as follows: Additions to Tax
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
$9,098
$454.90 *
The issues for decision are: 1) whether petitioners are entitled to a charitable contribution deduction for amounts allegedly contributed to the First Church of Theophysics, a local chapter of the Universal Life Church, Inc., of Modesto, California; 2) whether petitioners are liable for additions to tax under section 6653(a)(1) and section *293 6653(a)(2); and 3) whether damages should be awarded under section 6673. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Shelton Worden Riggs, Jr. (petitioner) and Roberta Rose Riggs (Roberta), husband and wife, resided at Sunnyvale, California, when they filed the petition herein. During 1981, petitioner worked as a computer software consultant for Advanced Electronics Design and Singer Company. He received compensation totalling $35,377.44 from these companies during 1981. During 1981, petitioner's wife received compensation of $18,879.83 from Acctex Corporation for services performed as a job counselor. On July 3, 1978, petitioner received Charter No. 22122 from the Univeral Life Church, Inc., of Modesto, California. Petitioner was subsequently ordained a minister *294 by the Universal Life Church on April 15, 1980, and soon thereafter started a local chapter of the Universal Life Church which he called the First Church of Theophysics (hereinafter sometimes referred to as FCOT). Petitioner organized FCOT to teach a philosophy which he had developed called "Theophysics." Petitioner outlined his philosophy, which combined both physics and religion, in a book titled "Theophysics: The Scientific Basis for Religious Belief." Petitioner published 100 copies of his book and contributed all rights to the book to FCOT. During 1981, a group of approximately three people regularly met at petitioners' residence on Sundays at 6:30 p.m. to discuss the philosophy of Theophysics. During these meetings, petitioner would also discuss computers as well as assist his son's friends in the preparation of their school work. Petitioners did not perform any marriages or baptisms during 1981. Petitioner, however, did counsel victims of tragedies. During 1981, an account in the name of the First Church of Theophysics was maintained at Bank of America. Petitioners, who did not maintain any bank accounts in their own names, had signatory authority on the FCOT bank *295 account. During 1981, petitioners made cash payments totalling $30,975 to the FCOT bank account. During 1981, petitioners made the following payments with funds from the FCOT bank account: Downpayment on residence purchased by petitioners
in their individual capacity on September 11,
1981, for $144,000
$14,400.00
Closing costs incurred to purchase personal
5,000.00
residence
Dryer, couch, refrigerator and carpets for
personal residence
3,207.24
Rent on personal residence (Jan. 1, 1981-Sept.
21, 1981)
3,450.00
Mortgage on personal residence (Sept. 21,
1981-Dec. 21, 1981)
3,702.12
Utilities
244.03
Auto expenses
13.50
Donations (Universal Life Church, Modesto,
California; UTEP; United Way)
100.00
Insurance
21.75
Repairs
75.00
Service charge on bank account
42.00
Miscellaneous
18.00
TOTAL
$30,273.64
On their 1981 Federal income tax return, petitioners claimed a charitable contribution deduction of $26,349.15 for amounts purportedly contributed to the First Church of Theophysics. [2] In the notice of deficiency, respondent disallowed this deduction in full. *296 OPINION The first issue for decision is whether petitioners are entitled to a charitable contribution deduction for amounts allegedly contributed to the First Church of Theophysics, a local chapter of the Universal Life Church, Inc., of Modesto, California. Deductions are a matter of legislative grace and petitioners must satisfy the specific statutory requirements of the deductions that they claim. Deputy v. Du Pont,308 U.S. 488 (1940); New Colonial Co. v. Helvering,292 U.S. 435 (1934). Petitioners bear the burden of proving that they are entitled to the deductions that they claim. Rule 142(a). Petitioners do not contend that they are entitled to a charitable contribution deduction for amounts contributed to the Universal Life Church, Inc., of Modesto, California. Rather, they contend that they are entitled to deduct certain amounts which they contributed to the First Church of Theophysics, a local chapter of the Universal Life Church which they created. Because the tax exemption granted to the Universal Life Church, Inc., of Modesto, California, is not a group exemption, Davis v. Commissioner,81 T.C. 806, 815 (1983), *297 affd. without published opinion 767 F.2d 931 (9th Cir. 1985), petitioners must establish that they made a contribution or gift to an organization which independently satisfies the requirements of section 170(c). This they have not done. First, petitioners have not established that they made a gift or contribution during 1981. In order to make a legitimate gift, the donor must place the donated property outside his control. Davis v. Commissioner,supra at 813. In the instant case, petitioners had sole signatory authority on the FCOT bank account and had unrestricted use of the funds contributed to this account. Consequently, petitioners did not part with control over the funds allegedly contributed, and, therefore, they did not make a gift or contribution. Davis v. Commissioner,supra.
Moreover, even if petitioners had made a gift of the contributed funds, they have not established that FCOT satisfies the requirements of section 170(c). To satisfy the requirements of section 170(c), petitioners must establish, among other things, that no part of FCOT's net earnings (which include contributions made to FCOT) inured to their *298 private benefit or the private benefit of other individuals. Section 170(c)(2)(C). During 1981, however, petitioners paid personal expenses totalling $30,273.64 with funds from the FCOT bank account. These expenses included a cash downpayment of $14,400 and closing costs of $5,000 which were incurred in connection with the purchase of petitioners' personal residence.They also used FCOT funds to purchase home furnishings and appliances and to pay their mortgage, utility bills, charitable contributions, automobile expenses and insurance premiums. These expenses all constitute personal living expenses which petitioners would have incurred regardless of whether they had established FCOT. As we stated in Miedaner v. Commissioner,81 T.C. 272, 281 (1983), "[t]he church account was simply a magic wand whereby personal expenses were converted into tax deductions." Consequently, we find that the funds placed in the FCOT bank account were used for the personal benefit of petitioners. Petitioners, therefore, are not entitled to a charitable contribution deduction for amounts they allegedly contributed to the First Church of Theophysics during 1981. In so holding, we *299 have also considered and rejected petitioners' argument that the funds which they used to pay their personal expenses are equivalent to a parsonage allowance, and, therefore, that such payments do not constitute a prohibited inurement. Section 107 provides, in pertinent part, that: In the case of a minister of the gospel, gross income does not include -- (1) the rental value of a home furnished to him as part of his compensation; or (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home. Petitioners have presented no evidence that the payments of $30,273.64 which they made with FCOT funds represented the rental value of a home furnished to a minister of the gospel as part of his compensation or a rental allowance paid as part of a minister's compensation used by him to rent or provide a home. In light of the fact that petitioner worked full-time as a computer consultant and only held church meetings once a week, the amount withdrawn from the FCOT bank account was far in excess of any reasonable rental allowance petitioner would have received as compensation for his services as a bona fide minister. Even if we *300 were to accept petitioners' contention that their residence constituted a parsonage, which we do not, the deduction would be disallowed as excessive. Excessive parsonage allowances are earnings of an organization which inure to an individual's benefit. Unitary Mission Church v. Commissioner,74 T.C. 507, 514 (1980), affd. without published opinion 647 F.2d 163 (2d Cir. 1981); Hall v. Commissioner,729 F.2d 632, 634 (9th Cir. 1984). For the above reasons, respondent's disallowance of petitioners' charitable contribution deduction is sustained. Respondent determined additions to tax under section 6653(a)(1) and section 6653(a)(2) for 1981. Petitioners offered no evidence that their underpayment of tax was not due to negligence or intentional disregard of the rules and regulations. Consequently, the additions to tax are sustained. Finally, we must decide whether damages should be awarded to the United States under section 6673. Section 6673 provides that the Court may award damages of up to $5,000 to the United States whenever it appears that a proceeding has been instituted or maintained primarily for delay or that the taxpayer's *301 position is frivolous or groundless. We think section 6673 damages are appropriate in this case. Petitioners' protestations of good intentions do not mask the staleness of their argument in support of their mail order church deductions, which have been repeatedly rejected by the Courts. Frivolous cases such as this clog the system and not only delay the assessment and collection of taxes rightfully due from petitioners, but also delay the consideration and disposition of meritorious cases by this Court. Damages are therefore awarded to the United States in the amount of $1,000. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code of 1954 as amended and in effect during the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure. * To be based on an underpayment of $9,098.↩
2. During 1981, petitioners allegedly contributed $30,975 to the First Church of Theophysics. Section 170(d), however, generally limits an individual's charitable contribution deduction to 50 percent of his adjusted gross income. Petitioners therefore claimed on their 1981 return a charitable contribution carryover of $4,625.85 for 1982.↩