MICHAEL B. and SARA L. HERNANDEZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hernandez v. Commissioner
Docket No. 9436-83.
United States Tax Court
T.C. Memo 1986-327; 1986 Tax Ct. Memo LEXIS 286; 51 T.C.M. (CCH) 1631; T.C.M. (RIA) 86327; July 29, 1986. *286 During 1977, 1978 and 1979, P transferred funds to MARRES, a tax-exempt organization of which he was the founder and executive director. P had complete control over such funds and some were used to pay for P's subscriptions, dues, real estate training course, and loans. Held: (1) P's claimed contributions are not deductible since P has retained dominion and control over MARRES' funds, and some of such funds have inured to P's benefit. (2) P has failed to introduce any evidence to carry his burden of proving that the underpayments were not due to negligence or intentional disregard of rules and regulations within the meaning of sec. 6653(a), I.R.C. 1954. Frank P. Hernandez, for the petitioners. Deborah A. Butler, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined deficiencies in, and additions to, the petitioners' Federal income taxes as follows: Additions to Tax
Sec. 6651(a)
Sec. 6653(a)
Year
Deficiency
I.R.C. 1954 [1]
I.R.C. 1954
1977
$11,527.85
$350.73
$845.89
1978
14,449.13
1,526.16
765.46
1979
18,732.88
3,549.87
1,232.49
*288 The issues remaining for decision are: (1) whether the petitioners have adequately substantiated the charitable deductions claimed by them for 1977, 1978, and 1979; (2) whether the funds of the donee organization inured to the benefit of the petitioner; and (3) whether the petitioners are liable for the addition to tax pursuant to section 6653(a) for such years. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Michael B. and Sara L. Hernandez, maintained their legal residence in Duncanville, Tex., at the time of filing their petition in this case. They filed joint Federal income tax returns for 1977, 1978, and 1979 with the Internal Revenue Service Center, Austin, Tex. Mr. Hernandez will sometimes be referred to as the petitioner. Mr. Hernandez founded the Mexican American Research, Resource, and Educational Services, Inc. (MARRES), in 1969. On October 12, 1970, MARRES was determined to be exempt from Federal income tax under section 501(c)(3). MARRES was organized for educational, scientific, charitable, *289 and public service purposes. The articles of incorporation, as amended, provided in part: This organization is dedicated in addition to the above, through the implementation of positive programs, and by establishing channels for the interchange of information, to the stimulation of youth towards public service, productive and worthy goals, to lessesing [sic] the burdens of government, lessening of neighborhood tensions, elimination of prejudice and discrimination, combating of community and environmental deterioration and juvenile delinquency and for the stimulation of more active citizenship. The petitioner has been the executive director of MARRES since its inception. Prior to 1977, MARRES received no donations, and the petitioner has been the sole source of any contributions thereafter. Apparently, the petitioner was unable to locate individuals interested in making contributions to MARRES so it was not until September 1981 that MARRES began its first charitable activity. At that time, in cooperation with the Development Office at the University of Texas at Austin, a graduate fellowship was established with monies from MARRES. Although MARRES expended no funds to the fellowship *290 prior to such time, the organization's goal had been to establish a fellowship at the University. It was the petitioner's belief that MARRES needed $25,000 to establish it. When he was informed that there was an extended plan, which enabled smaller donations to be made until the goal of $25,000 was reached, MARRES became involved. In 1975, the petitioner founded the League for Equal Opportunity Now (LEON), which the IRS held not to be exempt from taxation. The petitioner has been the president of LEON since its inception, and it is clear from the record that he has always had complete control over LEON. The sole purpose of LEON was to "implement programs" through the use of monies contributed to MARRES and then transferred to LEON. There is no evidence that LEON ever implemented any charitable programs. During the years at issue, the petitioner maintained bank accounts with the First National Bank of Duncanville, under his sole signatory authority, in the name of MARRES and LEON. The account in MARRES name shows deposits of $2,000 for 1977, $10,700 for 1978, and $5,500 for 1979. After such deposits had been made, the petitioner transferred $12,700 to the LEON account. Subsequently, *291 $8,500 was transferred from the LEON account into the petitioner's personal account at the Federal Credit Union. The petitioner believed that MARRES could not open an account at the Federal Credit Union, and it is his position that the purpose of such transaction was to earn a higher interest rate for MARRES. The interest earned on the money at the Federal Credit Union was reported on the petitioners' personal tax returns. Apparently in 1981, the petitioner returned this money, together with interest, to MARRES. Analysis of the checks and stubs for the LEON account establishes that the petitioner utilized such funds for subscriptions and dues ($97.75); a loan for a real estate training course ($495.00); and payment on the petitioner's personal loan with the Government Agencies Dallas Federal Credit Union ($1,200). On their Federal income tax returns, the petitioners claimed deductions for charitable contributions of $3,352.00 in 1977, $7,389.00 in 1978, and $6,004.05 in 1979. In 1977, these claimed contributions included a $2,000 donation to MARRES and $1,352 for contributions made to public organizations such as United Fund, Red Cross, and the Dallas Police Association. The *292 1978 contributions included $6,400 to MARRES and $989 [2] to other organizations. For 1979, no such breakdown was given on the petitioners' Federal income tax return. In the notice of deficiency, the Commissioner determined that the petitioners' deductions for charitable contributions for the years at issue were not allowable because the amounts or the deductibility had not been adequately substantiated. The Commissioner also determined that the petitioners were liable for each of the years for the addition to tax under section 6651(a) for having filed an untimely return and the addition to tax under section 6653(a) for an underpayment of tax due to negligence or intentional disregard of rules and regulations. The petitioners now concede that they are liable for the addition to tax under section 6651(a) for each year. OPINION The first issue for decision is whether the petitioners can deduct charitable contributions *293 of $3,352.00 in 1977, $7,389.00 in 1978, and $6,004.05 in 1979. On their Federal income tax returns, the petitioners claimed portions of these amounts as contributions to public organizations, such as the Red Cross and United Fund. However, the petitioners have offered no testimony, receipts, or other evidence concerning any of the contributions to public organizations. Consequently, we infer that they have abandoned any claim for deductions for contributions to the public organizations. The petitioners have argued at trial and on brief that they are entitled to the deductions claimed by them as contributions to MARRES. Deductions are a matter of legislative grace, and taxpayers must satisfy the specific statutory requirements applicable to the deductions claimed by them. Deputy v. DuPont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Charitable contributions cannot be deducted unless they are made to organizations described in section 170(c). Sec. 170(a). Pursuant to section 170(c), the petitioners' contributions to MARRES are not deductible unless it was organized and operated exclusively for charitable purposes *294 and no part of its net earnings inures to the benefit of any private individual. The crux of the Commissioner's position is that the petitioner has maintained control of MARRES and that the alleged contributions have inured to the petitioner's benefit. The petitioner contends that he has not received any benefits from MARRES. The burden of proof rests with the petitioners. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). An organization is operated "exclusively" for exempt purposes if its activities primarily serve one or more exempt purposes and not, except to an insubstantial degree, a nonexempt purpose. Canada v. Commissioner,82 T.C. 973, 980 (1984); sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. The existence of a single nonexempt purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly exempt purposes. Better Business Bureau v. United States,326 U.S. 279, 283 (1945); see also Canada v. Commissioner,supra;Nat. Assn. of American Churches v. Commissioner,82 T.C. 18, 28-29 (1984). An *295 organization is not operated exclusively for exempt purposes unless it is operated for the benefit of the public rather than for the benefit of a private interest. Church of the Transfiguring Spirit v. Commissioner,76 T.C. 1, 5 (1981). The statute also requires that no part of the net earnings of the charitable organization inure to the benefit of any private individual. Sec. 170(c)(2)(C). Even if the benefit inuring to the members is small, it is still impermissible. McGahen v. Commissioner,76 T.C. 468, 482 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983); Unitary Mission Church v. Commissioner,74 T.C. 507, 513 (1980), affd. without published opinion 647 F.2d 163 (2d Cir. 1981). The phrase "net earnings" includes more than mere net profits, and benefits may inure to private individuals other than through the distribution of dividends. Canada v. Commissioner,82 T.C. at 981; Unitary Mission Church v. Commissioner,74 T.C. at 512-513. Additionally, the term "charitable contribution," as it is used in section 170, is largely synonymous with the term *296 "gift." Davis v. Commissioner,81 T.C. 806, 817 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985); Seed v. Commissioner,57 T.C. 265, 275 (1971); Wolfe v. Commissioner,54 T.C. 1707, 1713 (1970); DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F.2d 373, 376-379 (9th Cir. 1962). A gift is generally defined as a voluntary transfer of property to another without consideration. Retained control and personal benefits preclude a finding of a gift. Davis v. Commissioner,supra.
The petitioner's retained dominion and control of MARRES' funds, and the personal benefits derived from such funds, precludes a finding of any charitable contributions within the meaning of section 170. The record clearly establishes that the petitioner retained control over the funds transferred to MARRES and then to an account in the name of LEON. The petitioner has always had complete control over both MARRES and LEON. Not only has he been the executive director of MARRES and president of LEON since their inception, but he has had sole signatory authority over both *297 of the accounts. Additionally, an analysis of the checks and stubs for the LEON account establishes that the petitioner utilized such funds for subscriptions and dues, a real estate training course, and payment on the petitioner's personal loan with the Government Agencies Dallas Federal Credit Union. No evidence whatsoever has been offered to show us that these uses do not constitute benefits inuring to the petitioner. Thus, the petitioner has utterly failed to carry his burden of proving that the funds transferred to MARRES constitute charitable contributions; therefore, the petitioners' claimed contributions are not deductible. We must also decide whether any part of the deficiencies due from the petitioners is attributable to their negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Under this section, negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). The petitioners have the burden of proving they were not negligent. Neely v. Commissioner,supra;Bixby v. Commissioner,58 T.C. 757, 791 (1972); *298 Inter-American Life Insurance Co. v. Commissioner,56 T.C. 497, 512 (1971), affd. per curiam 469 F.2d 697 (9th Cir. 1972). The petitioners have failed to introduce any evidence to carry their burden. Indeed, the petitioners struck us as reasonably intelligent, well educated individuals; they must have known that some record of their claimed contributions would be required. However, no such evidence has been provided to us. Furthermore, no reasonable person could have believed that amounts channeled through MARRES and LEON to their own bank account and amounts used for their own personal benefit could qualify as charitable contributions. On the basis of this record, we hold that the petitioners have failed to carry their burden of showing that the underpayments of tax were not due to negligence or intentional disregard of rules and regulations. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. Apparently the petitioner made a mathematical error in his total when he added his claimed contributions and transferred them to his tax return for 1978; his list totals $7,399, but he only claimed $7,389 as contributions. This error has no effect on our decision.↩