CHURCH OF ETHEREAL JOY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9727–83X.     Filed July 17, 1984.

Glenda Burnside, Michael L. Morgan, and David Snow (officers), for the petitioner.
*Deborah A. Butler*, for the respondent.

OPINION

FEATHERSTON, *Judge*: In this action, petitioner seeks a declaratory judgment pursuant to section 7428(a)[1] that it qualifies for tax-exempt status under section 501(c)(3) and as a church under section 509(a)(1). Upon completion of the administrative consideration of petitioner's status, the Internal Revenue Service issued a ruling in part as follows:

This is a final adverse determination with respect to your exempt status under section 501(c)(3) of the Internal Revenue Code.

The adverse determination was made because you are not operated exclusively in furtherance of one or more of the exempt purposes described in I.R.C. Section 501(c)(3) and the regulations promulgated thereunder.

---

[1] All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise noted.

Additionally, your activities are not exclusively in furtherance of any exempt purpose described in I.R.C. Section 501(c)(3) and the regulations promulgated thereunder. Additionally,the documents submitted by or on behalf of your organization fail to establish that you are operated exclusively as an organization which is described in Section 501(c)(3) and the regulations promulgated thereunder. Further, we have determined that if you were an organization described in Section 501(c)(3), you would be a private foundation because you are not a church within the meaning of Section 170(b)(1)(A)(i), the only basis on which you claimed non-private foundation status.

Contributions made to your organization are not deductible under section 170 of the Internal Revenue Code.

Following the issuance of this ruling, petitioner timely instituted this action for declaratory judgment.

To qualify for exemption under section 501(c)(3),[2] petitioner has the burden of showing (1) that it is organized and operated exclusively for religious or charitable purposes, (2) that no part of its earnings inures to the benefit of a private individual, and (3) that no substantial part of its activities consists of the dissemination of propaganda or otherwise attempting to influence legislation or engaging in political activity. Sec. 1.501(c)(3)–1, Income Tax Regs. Although they are separate requirements, the "private inurement" test and the "operated exclusively for exempt purposes" test prescribed by section 501(c)(3) often substantially overlap. *Church of the Transfiguring Spirit v. Commissioner*, 76 T.C. 1, 5 n. 5 (1981); *People of God Community v. Commissioner*, 75 T.C. 127, 131 (1980).

An organization is not operated exclusively for an exempt purpose if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs. *Western Catholic Church v. Commissioner*, 73 T.C. 196, 208 (1979), affd. in an unpublished opinion 631 F.2d 736 (7th Cir. 1980); *Nat. Assn. of American Churches v. Commissioner*, 82 T.C. 18, 28–29 (1984). Section 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs., provides that

---

[2]SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

* * * * * * *

(3) Corporations, * * * organized and operated exclusively for religious * * * purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *

an organization is not operated exclusively for exempt purposes unless it is operated for the benefit of the public rather than for the benefit of a private interest. Petitioner must therefore show that it is not organized or operated for the benefit of private interests such as those of its organizers. *Basic Bible Church v. Commissioner*, 74 T.C. 846, 856 (1980).

In support of his final determination, respondent contends that petitioner has not met its burden of showing that it is operated exclusively for exempt purposes within the meaning of section 501(c)(3). Respondent's contention is that, when petitioner starts its operations, they may be carried on for the benefit of its organizers rather than for the public benefit.

Petitioner has written many words to the Internal Revenue Service in its efforts to obtain tax-exempt status but, as far as we can tell from those words, petitioner has done little, if anything, else. After a careful review of the administrative record, we agree with respondent that petitioner has not shown that it is operated, or will be operated, exclusively for religious purposes within the meaning of section 501(c)(3). The available evidence does not show that petitioner's present or planned activities serve public rather than private interests. It is not, therefore, entitled to section 501(c)(3) exempt status.

According to a Form 1023, Application for Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code, petitioner has no assets, and contributions will not be received until the organization has obtained a ruling exempting it from tax. Similarly, petitioner's services and activities have been suspended pending the granting of exempt status. With the exception of the three members of the board of directors, petitioner has no identifiable congregation. It has performed no marriages, burials, baptisms, or other sacerdotal functions. It has no organized ministry; nor does it provide religious services or religious education for the young.

Petitioner has executed a document headed "Articles of Association" and has adopted a set of bylaws. The articles recite that: "This association is established for the purpose of operating a church for religious purposes." The articles state that the general management of petitioner's affairs "shall be under the control, supervision and direction of a board of directors which shall have three members." Petitioner has declared that: "Our Board of Directors controls the church."

Vacancies on the board of directors "shall be filled by a majority of the remaining directors or by the sole remaining director." The articles of association, bylaws, and materials to. be used for "religious services" were taken from a form book entitled "Nonprofit Can Be Profitable," written by Theodore Swenson and published by the Mother Earth Church in 1978.[3]

The original directors and founders of petitioner are: Bucky Carr, 621 Cherry Street, Denver, CO; Glenda Burnside, 4511 Bryant Street, Denver, CO; and B. Conklin, 3296 Raleigh, Denver, CO. B. Conklin is also referred to as Bill Conklin and William Conklin in the record before the Court. Although Carr and Burnside use the title "Reverend" and are stated to have been "ordained by the spirit of Ethereal Joy through Eternal Essence," they have no religious training except such training as was derived "from within."

Bucky Carr is employed at Mercy Hospital in Denver. Glenda Burnside is employed as a teacher in the Jefferson County Public Schools, and William Conklin's principal occupation is described as that of "house-husband and homemaker." Conklin's occupation is also stated to be that of a member of the board of directors of Beyond Monogamy, Inc., Church of World Peace, and the Church of Ethereal Joy. He is also stated to be a member of the Universal Life Church and archbishop of the Church of World Peace.

According to the articles of association referred to above, these three members of the board of directors have complete control of all of petitioner's operations, whatever those operations may turn out to be. They are a small self-perpetuating group who could, without challenge, dictate petitioner's program and operations, prepare its budget, and spend its funds. And they could continue to do so indefinitely. Although control by such a small group may not necessarily disqualify it for exemption, "it provides an obvious opportunity for abuse of the claimed tax-exempt status." *Bubbling Well Church v. Commissioner*, 74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981). Given the information contained in the administrative record with respect to the activities of one of the members of the board of directors, we are not convinced that petitioner would not abuse its exempt status if such were granted.

---

[3]The organization claiming exemption in *Church of the Transfiguring Spirit v. Commissioner*, 76 T.C. 1, 2 (1981), also obtained its organization papers from Mother Earth Church, Inc.

The administrative record shows a close relationship between Conklin, one of petitioner's organizers and directors, and two other organizations, the Universal Life Church and the Church of World Peace. The address given for petitioner on the petition signed by Glenda Burnside and filed in this case is P.O. Box 12471, Denver, CO, and the telephone number shown on the petition is 303–433–0224. In a communication to an Internal Revenue Service appeals officer, this same mailing address is shown as that of Bill Conklin. The administrative record indicates that this post office box address is also used by the Universal Life Church. The record also contains communications signed by Bill Conklin on the letterhead of the Church of World Peace which show the telephone numbers 303–433–0224 and 455–9023. An advertisement for the Church of World Peace gives Conklin's home address of 3296 Raleigh and his telephone number 433–0224.

The administrative record includes the following advertisement which appeared in the Denver Downtowner:

### ˙ REDUCE INCOME TAX BY 70 PERCENT

In 1974, the IRS challenged the tax-exempt status of the Universal Life Church and lost in District Court. We have over 50,000 tax-exempt congregations without a successful challenge. You won't see many of our ads because we are growing so rapidly by word of mouth, but we believe that people who are not lucky enough to know a ULC minister also deserve to reap the blessings given to us by the Internal Revenue Code, so we advertise once in a while to give everyone a chance.

Universal Life Church

| Denver Center Office | P.O. Box 12471 |
| Denver, CO 80212 | (303) 455–9023 |

The Universal Life Church post office box number 12471, given in this advertisement, is the same as the mailing address shown for petitioner throughout the administrative record in this case. It is also the mailing address, as indicated above, shown on the petition and other papers filed with the Court in this case. The telephone number given in this advertisement, 455–9023, is also one of the telephone numbers, as we have stated, used by Conklin in correspondence on the letterhead of the Church of World Peace.

Also included in the administrative record is a newspaper article on an interview with Conklin, entitled "Life and

Taxes," which appeared in the Rocky Mountain News. The article states the following with respect to the Universal Life Church:

The miracle arose, inevitably, in golden California. One day in 1962, a transplanted North Carolinian named Kirby J. Hensley founded a church of his very own in his garage in Modesto. He began sprinkling ordination certificates around like confetti and, before too long, had established mail order congregations all over the country. Ministers of the new church claimed tax-exempt status.

Hensley's breakthrough came in 1974 when a federal judge upheld the ULC tax claim, citing First Amendment guarantees. Since then, homegrown, tax-exempt churches have sprung up everywhere. The ULC, still the General Motors of the field, claims 60,000 congregations and 11 million members. Kirby J. Hensley, now 69 and anointed with the title of bishop and, informally, the Modesto Messiah, now provides Doctor of Divinity degrees for a $20 contribution. He's got $5 sainthoods for sale, $10 Doctor of Metaphysics certificates and $100 Soul Clinic licenses. * * *

The Rev. William Conklin is the ULC's man in Colorado, shepherd to all those atheists and Buddhists and whatnots who make up the more than 250 "congregations" in Colorado, most of them composed of just three people. It costs seekers of wisdom and truth $10 for instant ordination and a much heftier $800 to set up a ULC church complete with all the legal documents. By all accounts it's worth it: ULC "ministers" save 75 percent on their federal tax bills.

*     *     *     *     *     *     *

As for the Rev. William Conklin, he's looking ahead, too. "I'd like to see 25 or 30 percent of Denver ordained in the Universal Life Church," he says, "and get the same tax break as traditional religions. We'll do it."

His logic, centered in the wallet, is divine.

The advertisement and newspaper article were submitted by the Internal Revenue Service to petitioner for comment on the relationship of petitioner, the Church of Ethereal Joy, to both the Church of World Peace and the Universal Life Church. Petitioner's comments, included in the administrative record, on the advertisement, which are as follows, do not deny Conklin's connection with either the Universal Life Church or the Church of World Peace:

Since we don't know what you mean when you are asking what the association or connection is between the organizations, if there is one, we don't know how to answer. Could you be more precise? Since Rev. Conklin was helping us, for convenience sake asked to use his return address. That is why we are using that PO Box. He also answers the 455–9023 phone. We

could have used another phone and address but he was writing the answers and the tax court petition for the Church. It just seems more convenient. Presuming that you mean by connection that the Church of Ethereal Joy has a congregation agreement with the Universal Life Church or the Church of World Peace, the answer is that there is no connection because it does not have such.

The comments on the newspaper article were as follows:

Rev. Conklin does many wonderful spiritual things. If you want to find out more about his spiritual inclinations, ask him. The fact that he does other spiritual things, is not a problem to us as long as he fulfills his services to us. Anyway, he is only helping with organization at this point and does not want to serve on the baord [sic] after we are completely organized.

In recent years, the courts have been presented with numerous cases in which the Internal Revenue Service has disallowed purported charitable deductions by individuals to the local organizations spawned by the mail-order activities of the Universal Life Church. The courts have not only consistently denied the claimed deductions but have consistently sustained section 6653(a) additions to tax for negligence or intentional disregard of the revenue laws in such cases. See *Hall v. Commissioner*, 729 F.2d 632 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; *Davis v. Commissioner*, 81 T.C. 806 (1983); *Odd v. Commissioner*, T.C. Memo. 1984–180; *Murphy v. Commissioner*, T.C. Memo. 1983–59; *Owens v. Commissioner*, T.C. Memo. 1982–671; *Mustain v. Commissioner*, T.C. Memo. 1982–670; *Woods v. Commissioner*, T.C. Memo. 1982–653; *Magin v. Commissioner*, T.C. Memo. 1982–383; *Schilberg v. Commissioner*, T.C. Memo. 1982–336; *Kellman v. Commissioner*, T.C. Memo. 1981–615; *Riemers v. Commissioner*, T.C. Memo. 1981–456; *Brown v. Commissioner*, T.C. Memo. 1980–553; *Ross v. Commissioner*, T.C. Memo. 1980–284; see also *United States v. Toy National Bank*, an unreported case (N.D. Iowa 1979, 43 AFTR 2d 79–954, 79–1 USTC par. 9344); *Seward v. United States*, 515 F. Supp. 505 (D. Md. 1981). The administrative record shows quite clearly that Conklin has actively promoted the organization and operation of similar organizations in Colorado.

The administrative record contains a copy of a "church charter agreement" used by the Church of World Peace in organizing local "churches." This document indicates that the Church of World Peace operates a mail-order church activity

under procedures similar to the ones used by the Universal Life Church as disclosed by the facts in the foregoing cases: A charter issued to a church charter applicant; use by the applicant of the name Church of World Peace "or any other name that you would like"; provision for quarterly financial reports consisting of "a simple statement of income and expenses which shall show the source of income and the category of expenditure"; a reference to the section 501(c)(3) requirements; and provisions for the payment of quarterly fees to the Church of World Peace. Many of the Church of World Peace documents are signed by Conklin. The street address for the Church of World Peace given on these papers is 3296 Raleigh in Denver, the street address shown in the administrative record for Conklin as one of petitioner's directors.[4]

We are here faced with an entity which has applied for tax-exempt status as a religious organization under section 501 (c)(3), but has not yet actually engaged in any religious or other activities. We do not, therefore, have any facts on petitioner's actual operations to which we can look to determine its purposes. Although it has ordained two of its directors and given them the title "Reverend," petitioner awaits section 501(c)(3) tax exemption before engaging in any activities, religious or otherwise.

Until recent years, a mere declaration that an organization was a church was almost enough to assure its treatment as such under the revenue laws. The cynical abuse of the church concept for tax purposes in recent years, however, has made necessary the same critical analysis of organizations claiming exemption on that ground as organizations engaged in admittedly secular activities. *Van Dyke v. Commissioner*, T.C. Memo. 1983–190. We do know in this case that at least one of the organizers, a member of petitioner's board of directors, is an active participant in a widespread abuse of the revenue laws through the promotion of mail-order "churches." In view of the board of directors' absolute control of petitioner, we have no assurance that petitioner, if granted tax-exempt status, would not be used for similar abusive purposes for the profit of its organizers. Cf. *Bubbling Well Church v. Commissioner*, 74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981).

---

[4]See *Church of World Peace, Inc. v. IRS, et al.*, 715 F.2d 492 (10th Cir. 1983).

Accordingly, we find that petitioner has not shown that it is organized and operated for public rather than private purposes under section 501(c)(3). It is not entitled to tax-exempt status under that section. Having reached this conclusion, we need not deal with petitioner's section 509(a)(1) arguments.

*An appropriate order and decision will be entered.*