CHURCH OF MODERN ENLIGHTENMENT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Church of Modern Enlightenment v. Commissioner
Docket No. 18581-84X.
United States Tax Court
T.C. Memo 1988-312; 1988 Tax Ct. Memo LEXIS 341; 55 T.C.M. (CCH) 1304; T.C.M. (RIA) 88312; July 25, 1988
Richard *342 A. Engert (an officer), for the petitioner. Gail A. Berruti, for the respondent. WHALEN
MEMORANDUM OPINION WHALEN, Judge: This is an action for declaratory judgment pursuant to section 7428, [1] that petitioner qualifies as a religious organization exempt from taxation under section 501(c)(3). Respondent refused to recognize petitioner as such an organization based upon his determination that petitioner is not operated exclusively for exempt purposes as required by section 501(c)(3). The issue for decision is whether petitioner has met its burden of proving that it is operated exclusively for exempt purposes under section 501(c)(3). We find that it has not met such burden and, accordingly, declare our judgment that petitioner fails to qualify as an organization exempt from taxation under section 501(a). In accordance with Rule 217, the parties filed with the Court the entire administrative record, stipulated as to its genuineness, and they have submitted the *343 case based upon such administrative record. For purposes of this proceeding, we assume that the facts set out in the administrative record are true, Rule 217(b), and incorporate such record herein by reference. The following facts are revealed therein. The petitioner is an unincorporated organization, established on or about September 1, 1981, under the laws of the State of New York. At the time the petition in this case was filed, petitioner was located at 484 67th Street, Brooklyn, New York 11220. According to the "Constitution Of Church Of Modern Enlightenment Articles Of Organization," (herein "Constitution") petitioner was formed for the following purposes: The purposes for which the Church of Modern Enlightenment is formed are, to foster a more general understanding of the basic beliefs of the Church, promote a greater understanding between the Church and all religious faiths in order to promote universal brotherhood, create a theological synthesis of Christianity and Buddhism thereby creating a doctrine and philosophy based on this belief. This is the basic religious tenets and philosophy for which the Church was founded.
The "Articles & By-Laws of Church of *344 Modern Enlightenment A Non-Profit Church Organization" (herein "Articles") describe its purpose as follows: BRINGING THE WORD OF THE CREATOR TO THE PEOPLE OF THE WORLD AND PROMOTE THE SPREAD OF CHRISTIAN-BUDDHISM THROUGH THE DOCTRINE AND PHILOSOPHY OF THE CHURCH AND ITS ORDER. Both the Constitution and Articles provide that petitioner is to be governed by three or more "trustees." Each such trustee holds office until he resigns or is asked to resign by a majority of the trustees. In such event, the remaining trustees elect a successor. The Articles further provide for a president, one or more vice president, a secretary, a treasurer and such other officers as are elected by the trustees. The duties of the president are described as follows: The President shall be the principal executive officer and the final authority of the Church and Order, and shall in general, supervise and control all of the business and affairs of the Church. He or she shall preside at all meetings of the Trustees. He or she may sign as sole agent of the Church, or with the Secretary or any other proper officer of the Church authorized by the Trustees, all checks, any deeds, mortgages, bonds, contracts *345 or other instruments which the Trustees have so authorized to be executed, except in cases where the signing and execution thereof shall be expressly delegated by the Trustees or by these by-laws or by statute to some other officer or agent of the Church, and in general he or she shall perform all duties incident to the office and such other duties as may be prescribed by the Trustees from time to time.
The Articles also describe a position entitled "head of the Church and Order" in which "final authority of this Church and Order" is vested. The trustees are given authority to appoint a "new head of this Church and Order" but "only in case of death or incapacity of the present head of the Church and Order." Petitioner has three trustees, Richard A. Engert ("Engert"), Sanford I. Kleinman ("Kleinman"), and Phyllis A. Engert. Engert is also the president and head of the Church and Order; he has directed and managed petitioner's affairs from its inception. Engert is employed by the New York City Transit Authority ("Transit Authority") as a maintenance supervisor, level I. This so-called secular employment requires 40 hours per week. Engert contributes to petitioner all of *346 his compensation from the Transit Authority. Engert is the only person who has ever made a contribution to petitioner. Engert lives at the same location as petitioner's office, 484 67th Street, Brooklyn, New York 11220. Petitioner pays the rent at such location and provides Engert with food, clothing, and other necessities of life. Engert devotes approximately 25 hours per week to church affairs, 1-1/2 hours per week for services and approximately five hours per month for attendance at board of director meetings, time doing research into the "doctrine of Christian-Buddhism" and time devoted to other education. Trustee Phyllis A. Engert is Engert's sister. Trustee Kleinman is Engert's co-worker at the Transit Authority. Engert and Kleinman are the only ministers of petitioner; neither has any formal theological education or training, and thus, Engert and Kleinman are self-proclaimed ministers. [2]
*347 Membership in petitioner is open to all persons who believe in petitioner's tenets and its doctrine and philosophy and who "abide by the rules passed from the Order of the Circle of Golden Light (O.C.G.L.)." Such rules are confidential and were not disclosed during the administrative proceedings. Engert, Phyllis Engert and Kleinman are the only identifiable members of petitioner's congregation. Petitioner does not have a permanent place of worship. It uses the facilities of the Good Friendship Temple, 3820 Maple Avenue, Brooklyn, New York 11224, for the performance of its services. Since its inception, petitioner has incurred no expenses for religious services, articles, or supplies. Petitioner has no provisions for training or ordaining ministers. Petitioner has never had any provision for the religious instruction of the young. The only sacerdotal functions which petitioner has performed are a marriage service and a funeral service. An Application for Recognition of Exemption (Form 1023) was submitted to the Internal Revenue Service on petitioner's behalf, seeking recognition of tax-exempt status under section 501(c)(3). During respondent's administrative consideration *348 of such application, petitioner submitted an "annual financial report for 1982" setting forth its income and expenses as summarized in the following table: CONTRIBUTIONS
$ 21,619.00
PARSONAGE EXPENSES:
Rent   $ 2,335.74 Utilities (Gas, Electric,   Telephone)     610.75
Clothing   175.00
Food   1,555.00
Miscellaneous   225.00
Remodeling   305.00
CHURCH BUILDING FUND
CONTRIBUTIONS 15,500.00
OFFICE EXPENSES:
Stationary and Misc.   Printing     100.00
Postage   41.00
Books and Records for Library   140.00
Insurance   200.70
Education of Minister   60.00
Misc. Expenses   700.00
CONTRIBUTIONS:
Outgoing Expenses   682.40
Contributions   1,962.88
TOTAL EXPENSES
$ 24,593.47
The "parsonage expenses" set forth in the table above, in the aggregate amount of $ 5,206.49, are in fact Engert's living expenses. During the administrative proceedings, respondent inquired into the nature of the "church building fund contributions" listed above in the amount of $ 15,500.00. In response, Engert stated as follows on petitioner's behalf: * * * The Church Building *349 Fund is registered in the name of the Church. Contributions to the Building Fund are made from the general donations to the Church, in the future with the decision of determination [sic] members of the congregation will make direct contributions into the Building Fund.
Respondent also inquired into the nature of the "outgoing expenses" in the amount of $ 682.40 and "contributions" in the amount of $ 1,962.88. In response, Engert stated as follows on petitioner's behalf: Under this question the contributions listed are in error and the amounts should be greater than were listed, the amended list is as follows: Contributions: $ 1,962.88 contribution to Social Security
3,857.60   contribution to Federal Income Tax
1,184.77   contribution to State Tax
458.13     contribution to City Tax
195.00     contribution to Union Dues
13.00      contribution to General Payroll Charity
$ 7,671.38 Total withholding
This figure represents contributions which were withheld from Reverend Engert's secular income and as such denied to the Church as a donation, it was therefore listed under contributions outgoing expenses. The figure *350 that was listed as $ 682.40 was to reflect the amount of money that was contributed to various charities and non-profit organizations. The amount that is stated above does not include the amount of sales tax that as a general couse [sic] of the purchase of items needed in the upkeep and maintenance of the parsonage and Church office. Based upon the administrative record, the Commissioner issued a final adverse determination that petitioner is not exempt under section 501(c)(3). Respondent's determination is based upon the following grounds: The 1982 disbursements of $ 24,493 [3] consist almost exclusively of living expenses and support for Reverend Richard Engert. Thus, it is determined that part of the net earnings of your organization inure to the benefit of private individuals or shareholders and that yor [sic] organization serves a private rather than a public interest. Therefore, your organization has not established that it is exempt under Internal Revenue Code Section 501(c)(3). *351 Thereafter, the petition in this case was filed. We find that the statutory prerequisites for declaratory judgment jurisdiction of this Court under section 7428 have been satisifed: (1) Petitioner is the organization the qualification or classification of which is at issue; (2) petitioner has exhausted its administrative remedies; and (3) petitioner's pleading was filed before the 91st day after the date respondent's final adverse determination letter was mailed to petitioner. See section 7428(b). At the outset, we are called upon to decide whether certain documents, not contained in the administrative record as defined by Rule 210(b)(11), are properly before the Court. The subject documents are contained in an appendix to petitioner's opening brief. They are not included among the eighteen exhibits to Stipulation As To The Administrative Record, filed by the parties as required by Rule 217(b) and stipulated by them as constituting "the entire administrative record in the instant case." Petitioner does not request permission of the Court to supplement the administrative record or attempt to show good cause to introduce evidence not contained in such record as required by *352 Rule 217(a). Rather, petitioner's brief merely states as follows: The Administrative Record which was filed with the Respondent still is as stipulated, with the additions that are included with this brief, and entered in as an Appendix to the original Administrative Record. It is necessary that these documents are introduced at this time in order to sustain the arguement [sic] and since part of the documents were not in existence at the time that the original Administrative Record had been stipulated. These documents will be used to sustain the Church's exempt position. We agree with respondent that petitioner should not be permitted, based upon the above statement, to supplement the administrative record in this case. Our function in this declaratory judgment proceeding is to review the respondent's administrative determination based upon the material facts contained in the administrative record. Church in Boston v. Commissioner,71 T.C. 102, 105 (1978); Houston Lawyer Referral Service v. Commissioner,69 T.C. 570 (1978). To assure that the administrative *353 record is complete, a petitioner is required by section 7428(b)(2) to exhaust all administrative remedies before the jurisdiction of a court may be invoked under section 7428. Absent a showing of good cause, we are not at liberty to consider additional evidence which petitioner failed to present during the administrative proceedings or evidence which was not then in existence. Church in Boston v. Commissioner, supra at 105; Houston Lawyer Referral Service, supra.Otherwise, the statutory requirement to exhaust administrative remedies and our Rule 217(a) would be circumvented and this declaratory judgment proceeding would be expanded beyond the scope of section 7428 into a trial de novo. est of Hawaii v. Commissioner,71 T.C. 1067, 1076 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Church in Boston v. Commissioner, supra;Houston Lawyer Referral Service, supra.
To qualify as an organization described in section 501(c)(3) and thus be exempt from taxation under section *354 501(a), an organization must be both "organized and operated" exclusively for one of the exempt purposes described in section 501(c)(3). Respondent's adverse determination is that petitioner is not exclusively for exempt purposes; he raised no question about the purpose for which petitioner was organized or the activities it is empowered to perform. Treasury regulations promulgated under section 501 make it clear that an organization will not meet the "operational test" unless it is operated for the benefit of a public, rather than for the benefit of a private interest, in the sense that no more than an insubstantial part of its activities are conducted for the benefit of private interests, such as those of its organizers. Sections 1.501(c)(3)-1(c)(1) and 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. The regulations also make it clear that an organization will not meet such "operational test" if its net earnings inures in whole or in part to the benefit of private shareholders or individuals. Section 1.501(c)(3)-1(c)(2). These are separate, albeit overlapping, requirements within the operational *355 test and the failure to meet either one disqualifies the organization from exempt status. Church of Ethereal Joy v. Commissioner,83 T.C. 20, 21 (1984); Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488, 492 (1977). Respondent determined that petitioner fails to meet both such requirements of the operational test. Petitioner bears the burden of proving that respondent's determination is in error. Rule 217(c)(2)(i). Thus, petitioner bears the burden of proving that it serves public rather than private interests and that no part of its net earnings inure to the benefit of any private individual within the meaning of section 501(c)(3). See, e.g., Triune of Life Church, Inc. v. Commissioner,85 T.C. 45, 52 (1985), affd. without published opinion 791 F.2d 922 (3d Cir. 1986). Based on the administrative record, it is clear that Engert as petitioner's president and head of the Church and Order exercises complete dominion and control over petitioner, along with his sister and Kleinman, the other trustees. [4] Control *356 by such a small self-perpetuating group may not itself disqualify an organization from tax-exempt status but it presents an opportunity for abuse of the claimed tax exempt status and it calls for careful review of the operations and finances of the organization by the Court. Church of Ethereal Joy v. Commissioner, supra at 23; Bubbling Well Church of Universal Love, Inc. v. Commissioner,74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981). The administrative record fails to rebut respondent's determination that petitioner is operated to serve the private interests of its founder, Engert. See, e.g., Church of the Transfiguring Spirit, Inc. v. Commissioner,76 T.C. 1 (1981); Basic Bible Church v. Commissioner,74 T.C. 846 (1980), affd. per curiam sub nom. Granzow v. Commissioner,739 F.2d 265 (7th Cir. 1984); *357 Western Catholic Church v. Commissioner,73 T.C. 196 (1979), affd. without published opinion 631 F.2d 736 (7th Cir. 1980), cert. den. 450 U.S. 981 (1981). Engert is employed on a full time basis by the Transit Authority, and all of his compensation from such employment is donated to petitioner. He is petitioner's sole contributor. Petitioner in turn provides Engert with food, clothing, shelter and other necessities of life. Petitioner and Engert share Engert's residence located at 484 67th Street in Brooklyn. Petitioner's two ministers, Engert and Kleinman, have no formal religious training or education and have not been ordained as ministers by any organization, other than petitioner. Petitioner has no identifiable congregation other than its three trustees. Petitioner has no program for training or ordaining ministers nor does it provide religious instruction for the young. Petitioner incurs no expenses for religious services. There are statements in the administrative record that petitioner conducts regular services and petitioner claims to have submitted a weekly service schedule and other literature to the Internal Revenue *358 Service which are not contained in the administrative record. [5] However, there is no evidence that any such services were attended by anyone other than the petitioner's three trustees. Further, there is no evidence that petitioner undertook any evangelical or proselytizing activities in order to establish a congregation. Petitioner has performed only two sacerdotal functions. Moreover, the administrative record fails to show that no part of petitioner's net earnings inures to the benefit of a private shareholder or individual. Sec. 1.501(c)(3)-1(c)(2), Income Tax Regs.The payment of reasonable salaries does not constitute prohibited inurement, but the payment of excessive salaries does. Church of Eternal Life and Liberty, Inc. v. Commissioner,86 T.C. 916, 926 (1986). *359 Petitioner does not directly compensate Engert or its other trustees but an organization's net earnings may inure to the benefit of private individuals in ways other than by the direct payment of excessive salaries, such as by the payment of rent and other expenses on behalf of the individual. Founding Church of Scientology v. United States,188 Ct. Cl. 490, 496-497, 412 F.2d 1197, 1200 (1969), cert. denied 397 U.S. 1009 (1970). The determination of whether the aggregate amount paid by petitioner on Engert's behalf was reasonable or constitutes prohibited inurement is a question of fact. Unitary Mission Church Of Long Island v. Commissioner,74 T.C. 507, 514 (1980), affd. per order 647 F.2d 163 (2d Cir. 1981); Bubbling Well Church of Universal Love, Inc. v. Commissioner, supra at 537-538. In this case, prohibited inurement is strongly suggested by the fact that Engert is the sole contributed to petitioner, is the principal recipient of petitioner's distributions and is in control of the management of petitioner's funds. Church of Eternal Life and Liberty v. Commissioner, supra at 927; *360 Basic Bible Church v. Commissioner, supra at 857. Petitioner argues that the benefits it provides to Engert constitute reasonable compensation for Engert's services and petitioner cites our decision in Alive Fellowship of Harmonious Living v. Commissioner,T.C. Memo. 1984-87. In that case, all of the organization's members worked full time for the organization and lived very modestly. They were provided with room, board, medical care, and a personal allowance which averaged $ 20 per month. They lived in cabins and trailers in a rural area. The men worked at least 9 hours a day, 6 days a week while women worked only a few less hours per week. Even though some members received more than others, the record showed that everyone who received benefits from the organization was required to work for them, and in no case did the benefits received exceed the value of the service performed. Moreover, there was no suggestion that preference was given to any particular member in the administration of the organization's assets. We found that the compensation was reasonable and that there was, accordingly, no private inurement. Petitioner's case, however, *361 is distinguishable. Engert is employed on a full-time basis by the Transit Authority rather than by petitioner. The compensation received from such full-time employment is contributed to petitioner but Engert retains full control and use of such funds, including the so-called church building fund, by reason of his control of petitioner. The administrative record shows that Engert devotes 25 hours per week to petitioner's affairs, 1-1/2 hours per week for services, approximately 5 hours per month for board of directors meetings, time doing research into the "doctrine of Christian-Buddhism" and time devoted to other education. However, the administrative record fails to show that Engert's part-time services for petitioner's net earnings. Such net earnings are, after all, Engert's compensation from his full-time work for the Transit Authority. Thus, based upon the record before us, we hold that petitioner has not met its burden of proving that it is operated exclusively for religious purposes and we further hold that petitioner has not met its burden of proving that none of its funds inure to the benefit of Engert, a private individual. As a postscript to this opinion, we note *362 that this is not the first time we have been called upon to consider whether petitioner's net earnings inured to Engert during the year 1982. In Engert v. Commissioner,T.C. Memo. 1986-199, affd. without published opinion 810 F.2d 1160 (2d Cir. 1986), we held that Engert was not entitled to deduct charitable contributions to the petitioner in the amounts of $ 21,726.29 for 1981 and $ 22,313.49 for 1982. In that opinion, we stated as follows: Petitioner [Engert] has not shown that he made an unconditional gift to a qualified entity in either of the years in issue. Further, the evidence shows that the earnings [of the Church of Modern Enlightenment] inured to petitioner's private benefit.
Petitioner continued to reside at his apartment and to use his possessions as he always had. While he shared signatory authority over the church bank account with others, he could and did withdraw funds on his sole signature. The other trustees were a close relative and a co-worker with whom petitioner shared a reciprocal "church trustee" type arrangement. Cancelled checks from the church banking account received in evidence are uniformly for personal *363 expenses such as rent, electric bills, gas, charge accounts, and other personal or living expenses. Many checks are made payable to petitioner himself. On this record, we sustain respondent in the denial of petitioner's charitable deductions for 1981 and 1982. [Footnote omitted, emphasis supplied.] The Second Circuit affirmed this Court in an unpublished opinion dated December 12, 1986 (No. 86-4114), which states as follows: Petitioner argues alternatively that he made a charitable contribution of all of his income for the years 1981 and 1982 to the Church. However, it appears that petitioner made use of his earnings as if they were his own. For example, much of the money he "contributed" to the Church was used for his rent, utility bills and other personal expenses. Since the net earnings of the Church "inure[d] to the benefit of [a] private * * * individual," the Church does not qualify as a tax exempt organization under I.R.C. section 170(c)(2) as defined by I.R.C. section 501(c)(3). Petitioner is not entitled to deductions for the money he "contributed" to the Church since he has not established that he made a *364 gift to a qualified entity. [Emphasis supplied.]
Engert v. Commissioner, No. 86-4114, slip op. 1-2 (2d Cir. Dec. 12, 1986). The Court of Appeals also sustained the imposition of damages pursuant to section 6673 against Engert and, based upon its conclusion that Engert's appeal was "patently frivolous," the Court of Appeals also imposed sanctions against Engert. Id., slip op. at 2. From our review of the pleadings in Engert v. Commissioner, supra and the Court record in this case, it is evident that there is a close relationship between the issues and the parties in the two cases which might justify application of the doctrine of collateral estoppel. See Commissioner v. Sunnen,333 U.S. 591 (1948); cf. Universal Life Church, Inc. v. United States,9 Cl. Ct. 614 (1986). However, respondent has not raised collateral estoppel as a bar to these proceedings and, while there is authority for courts to impose such bar sua sponte and, thereby, avoid judicial waste and foster reliance on judicial decisions, see Taxation With Representation of Washington v. Blumenthal, et al.,    F.2d     ( D.C. Cir., April 14, 1981, 48 AFTR 2d 81-5244, 81-5245 n.7, 81-1 USTC par. 9329, at 86,865 n.7), *365 vacated and rehearing granted in an unpublished order (D.C. Cir., June 11, 1981) (en banc), we have not considered doing that here in view of the special nature of actions for declaratory judgment under section 7428. Based upon the foregoing, Decision will be entered for respondent.
Footnotes
1. Unless otherwise specified, all section references are to the Internal Revenue Code of 1954, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Engert is also a trustee and minister of the Good Friendship Temple, an organization similar to petitioner which was founded principally by Kleinman. The Good Friendship Temple filed a petition in this Court seeking recognition of tax-exempt status as a religious organization under section 501(c)(3) (docket No. 19706-84X). That petition is the subject of our opinion at T.C. Memo. 1988-313↩. 3. There is no explanation in the record for the different between this amount and the total expenses of petitioner set out in the above table, $ 24,593.47.↩
4. During the administrative proceedings, petitioner adknowledged Engert's control, as follows: "Reverend Engert only controls the Church [petitioner] in the same manner that a parent controls a child, by guiding and protecting it from harm and exterior forces that seek to change it." ↩
5. In its reply brief, petitioner calls this omission from the record "an obvious ruse of the Respondent to not have the literature included in the administrative record." However, an noted above, the administrative record was stipulated by petitioner and respondent, and was submitted to this Court pursuant to Rule 217(a)↩.