GOOD FRIENDSHIP TEMPLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Good Friendship Temple v. Commissioner
Docket No. 19706-84X
United States Tax Court
T.C. Memo 1988-313; 1988 Tax Ct. Memo LEXIS 343; 55 T.C.M. (CCH) 1310; T.C.M. (RIA) 88313; July 25, 1988
Sanford I. Kleinman (an officer), for the petitioner. Gail A. Berruti, for the respondent. WHALEN
MEMORANDUM OPINION WHALEN, Judge: This is an action for declaratory judgment pursuant *344 to section 7428, [1] that petitioner qualifies as a religious organization exempt from taxation under section 501(c)(3). Respondent refused to recognize petitioner as such an organization based upon his determination that petitioner is not operated exclusively for exempt purposes as required by section 501(c)(3). The issue for decision is whether petitioner has met its burden of proving that it is operated exclusively for exempt purposes under section 501(c)(3). We find that it has not met such burden and, accordingly, declare our judgment that petitioner fails to qualify as an organization exempt from taxation under section 501(a). In accordance with Rule 217, the parties filed with the Court, the entire administrative record, stipulated as to genuineness, and they have submitted the case based upon such administrative record. For purposes of this proceeding, we assume that the facts set out in the administrative record are true and incorporate such record herein by reference. Rule 217(b). *345 The following facts are revealed therein. Petitioner is an unincorporated nonprofit organization formed on August 15, 1981, under the laws of the State of New York and it maintained its principle office at 3820 Maple Avenue, Brooklyn, New York at the time the petition was filed. It was formed by Mr. Sanford I. Kleinman ("Kleinman"), Mr. Richard A. Engert ("Engert"), and Mr. Phillip D. Herschkowitz ("Herschkowitz") and the same three individuals are trustees of petitioner and constitute its governing body. Each such trustee holds office until he resigns or is asked to resign by a majority of the trustees. In such event, the remaining trustees elect a successor. The Board of Trustees is authorized to elect officers, including a president, vice president, treasurer, secretary, assistant treasurers and assistant secretaries. Kleinman is petitioner's president and as president he has the following duties: The President shall be the principle [sic] executive office of the governing board of trustees. He (she) shall preside at all meetings of the governing board of trustees. He (she) may sign as sole agent of the church, or with the Secretary or any other proper officer *346 of the church authorized by the governing board of trustees, all checks, any deeds, mortgages, bonds, contracts or other instruments which the board of trustees have [sic] authorized to be executed, except in cases where the signing and execution thereof shall be expressly delegated by the board of trustees or by these by-laws or by statute to some other officer or agent of the church, and in general he (she) shall perform all duties incident to the office and such other duties as may be prescribed by the governing board of trustees from time to time. He (she) shall faithfully discharge the duties of his (her) office.
Kleinman is also "head of the Temple and Order" and as such, has the following prescribed duties: The head of this Temple and Order shall, at all times, on a Twenty-four hour day, seven days a week, three hundred and sixty-five days a year, be engaged in the work of the Temple as an evangelist, minister and pastor-teacher. The head of the Temple and Order, as a matter of religious duty, requirement and responsibility, will and is hereby directed to use his or her secular occupation, employment and work in order to gain monetary remuneration for secular employment *347 and donate entirely the said remuneration received to the Temple and Order. This is done to help the Temple achieve its goals on earth. He or She is directed to follow the duties of the Temple and the Order of GOD'S FRIEND ON EARTH established under the name of the ordaining authority, the congregation, without compromise. All Temple business and religious activity information shall be kept in strict confidence and be considered privileged and kept secret as required by the vow of secrecy taken by the head of this Temple and Order.
Kleinman and Engert are petitioner's ministers but they have no formal theological or religious education or training and neither of them has been ordained by any religious organization other than petitioner. [2]
Petitioner's *348 religious beliefs are described as follows: The Temple seeks a theological mixing of Judaism and Buddhism. There are similar patterns in both religions. They both have miracles, healings, freedom of oppression especially Jews, struggling with the forces of evil and the inward struggle. Both religions believe in simplicy, [sic] compassion of others, serving of mankind, and one desire to receive salvation. Everyone prays in one form or another, which is meditation. The Silent Prayer is meditation toward God. The Temple believes in practicing and promulgating a living religion which is free of rites, rituals, dogmas, but having the responsibility to the members of the congregation, services through simple meditation and spiritual awareness of God, thereby receiving salvation. This will give uplifting to the souls of troubled people. In the present, we all have problems, meditation is the key to solutions. This is a brief summary of the basic beliefs of the Temple.
Its religious creed is "to promote universal brotherhood, peace on earth, general understanding of the basic beliefs of the Temple, to create a theological synthesis of Judaism and Buddhism thereby creating a *349 doctrine and philosophy on this belief. God is God, no matter in what religion people believe in." Petitioner has a code of discipline for its ministers, "the Order of God's Friend on Earth," but such code is confidential and available only to members of the Order. Petitioner's activities are as follows: This is a new concept in religion, which takes parts of Judaism, Buddhism and Christianity. We believe in GOD and GOD is in each and everyone of us. We believe in meditation twice a day for spiritual uplift of the mind and soul. We have services every week. We offer sunday school for our congregation's children. We donate our services to people in need of siritual [sic] guidance. We plan to have a religious library for our congregation. We also intend to have various types of prayergroups for our congregation's spiritual benefit. We are going to put out monthly bullitens [sic] about church activities and community affairs in the area for pick up and hand out at the temple's office.
Petitioner and its ministers have performed no sacerdotal functions. Petitioner has no school or course of instruction for the training and ordination of ministers. Petitioner offers *350 no religious articles or artifacts for distribution or sale. Petitioner holds services each week and notifies its members of the times of such services and special events through the distribution of literature. There is no evidence in the record to suggest that petitioner's membership or congregation consists of anyone other than Kleinman, Engert and Herschkowitz. The following table sets forth the income and expenses of petitioner for the eleven month period ending June 30, 1982 and for the twelve month period ending July 31, 1982: 11 Months
12 Months
Ending 6/30/82
Ending 7/31/82
DONATIONS
$ 18,600.00
$ 20,240.00
BUILDING FUND
6,420.00
6,920.00
TEMPLE EXPENSES:
Mortgage and Taxes
3,520.00
3,840.00
Rent -- Religious Retreat
440.00
640.00
Auto:
Insurance
330.00
360.00
Gas, Maintenance
440.00
490.00
Miscellaneous
700.00
800.00
OFFICE EXPENSES:
Stationary
140.00
140.00
Postage
40.00
40.00
Religious Books
--
40.00
CONTRIBUTIONS PAID OUT:
1,740.00
1,880.00
PARSONAGE EXPENSES:
Food
1,100.00
1,200.00
Utilities (Gas, Electric,
Telephone)
360.00
400.00
Clothing
190.00
290.00
Miscellaneous
1,200.00
1,800.00
TOTAL EXPENSES
$ 17,220.00
$ 18,840.00
*351 Kleinman is the only identifiable person who has ever made a contribution to petitioner. Kleinman is employed by the New York City Transit Authority ("Transit Authority") as a road car inspector. This employment requires 40 hours per week. Kleinman devotes approximately 25 hours per week to petitioner's affairs, 1-2 hours per week for services and approximately 5 hours per month for attendance at board of director meetings. The 25 hours per week is spent researching material relating to the "doctrine on Jewish-Buddhists." Kleinman and his family reside at 3820 Maple Avenue, Brooklyn, New York 11224, the same address as petitioner. The "mortgage and taxes" shown above in the amount of $ 3,840.00 are for Kleinman's personal residence. The expense for "rent -- religious retreat" in the amount of $ 640.00 on the above table is for the taxes and utilities for Kleinman's personal residence. The "parsonage expenses" in the aggregate amount of $ 3,690.00 on the above table are the living expenses of Kleinman and his family. Petitioner incurred no expenses for religious services, articles or supplies during its fiscal year ending July 31, 1982, except for $ 40.00 used for the purchase *352 of "religious books." The amount listed on the above table under the heading "Contributions Paid Out" in the amount of $ 1,880.00 is, in reality, the aggregate payroll tax deductions from Kleinman's pay checks from the transit authority for employment taxes. During the administrative proceeding, respondent inquired into the building fund expenses listed on the above table in the aggregate amount of $ 6,920. The following response was made in petitioner's behalf: The Temple's Building Fund is to have better place of prement [sic] place of worship or to expend [sic] the present site of the Temple. Contributions to the Temple's building fund are made from the general donations to the Temple. The Temple's Building Fund, of course, is in the name of The Good Friendship Temple. Based upon the administrative record, the Commissioner issued a final adverse determination that petitioner was not exempt under section 501(c)(3). Respondent's determination is based upon the following grounds: The disbursements of $ 17,430 of Good Friendship Temple for the taxable years [sic] ended July 31, 1982 consist almost exclusively of living expenses and support for Reverend Kleinman and *353 his family. Thus, it is determined part of the net earnings of your organization inure to the benefits [sic] of private shareholders and that your organization serves a private rather than a public interest. Therefore, your organization has not established that is exempt under Section 501(c)(3) of the Internal Revenue Code. Thereafter, the petition in this case was filed. We find that the statutory prerequisites for declaratory judgment jurisdiction of this Court under section 7428 have been satisfied: (1) petitioner is the organization the qualification or classification of which is at issue; (2) petitioner has exhausted its administrative remedies; and (3) petitioner's pleading was filed before the 91st day after the date respondent's final adverse determination was mailed to petitioner. Section 7428(b). At the outset, we are called upon to decide whether certain documents, not contained in the administrative record as defined by Rule 210(b)(11), are properly before the Court. The subject documents are contained in an appendix to petitioner's opening brief. They are not included among the thirteen exhibits to Stipulation As To The Administrative *354 Record, filed by the parties as required by Rule 217(b) and stipulated by them as constituting "the entire administrative record in the instant case." Petitioner does not request permission of the Court to supplement the administrative record or attempt to show good cause to introduce evidence not contained in such record as required by Rule 217(a). Rather, petitioner's brief merely states as follows: The Administrative Record which was filed with the Respondent still is as stipulated, with the additions that are included with this brief, and entered in as an Appendix to the original Administrative Record. It is necessary that these documents are introduced at this time in order to sustain the argument and since part of the documents were not in existence at the time that the original Administrative Record had been stipulated. These documents will be used to sustain the Temple's exempt position. We agree with respondent that petitioner should not be permitted, based upon the above statement, to supplement the administrative record in this case. Our function in this declaratory judgment proceeding is to review the respondent's administrative determination based upon the material *355 facts contained in the administrative record. Church in Boston v. Commissioner,71 T.C. 102, 105 (1978); Houston Lawyer Referral Service v. Commissioner,69 T.C. 570 (1978). To assure that the administrative record is complete, a petitioner is required by section 7428(b)(2) to exhaust all administrative remedies before the jurisdiction of a court may be invoked under section 7428. Absent a showing of good cause, we are not at liberty to consider additional evidence which petitioner failed to present during the administrative proceedings or evidence which was not then in existence. Church in Boston v. Commissioner, supra at 105; Houston Lawyer Referral Service, supra.Otherwise, the statutory requirement to exhaust administrative remedies and our Rule 217(a) would be circumvented and this declaratory judgment proceeding would be expanded beyond the scope of section 7428 into a trial de novo. est of Hawaii v. Commissioner,71 T.C. 1067, 1076 (1979), affd. without published opinion *356 647 F.2d 170 (9th Cir. 1981); Church in Boston v. Commissioner, supra;Houston Lawyer Referral Service, supra.
To qualify as an organization described in section 501(c)(3) and thus be exempt from taxation under section 501(a), an organization must be both "organized and operated" exclusively for one of the exempt purposes described in section 501(c)(3). Respondent's adverse determination is that petitioner is not operated exclusively for exempt purposes; he raised no question about the purpose for which petitioner was organized or the activities it is empowered to perform. Treasury regulations promulgated under section 501 make it clear that an organization will not meet the "operational test" unless it is operated for the benefit of a public, rather than for the benefit of a private interest, in the sense that no more than an insubstantial part of its activities are conducted for the benefit of private interests, such as those of its organizers. Sections 1.501(c)(3)-1(c)(1) and 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. The regulations also make it clear that an organization will not meet such "operational test" if its net earnings *357 inures in whole or in part to the benefit of private shareholders or individuals. Section 1.501(c)(3)-1(c)(2). These are separate, albeit overlapping, requirements within the operational test and the failure to meet either one disqualifies the organization from exempt status. Church of Ethereal Joy v. Commissioner,83 T.C. 20, 21 (1984); Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488, 492 (1944). Respondent determined that petitioner fails to meet both such requirements of the operational test.
Petitioner bears the burden of proving that respondent's determination is in error. Rule 217(c)(2)(i). Thus, petitioner bears the burden of proving that it serves public rather than private interests and that no part of its net earnings inures to the benefit of any private individual within the meaning of section 501(c)(3). See, e.g., Triune of Life Church, Inc. v. Commissioner,85 T.C. 45, 52 (1985), affd. without published opinion 791 F.2d 922 (3d Cir. 1986). Based on the administrative record, it is clear that Kleinman as petitioner's president and head of the Temple and Order exercises complete dominion *358 and control over petitioner, along with Engert and Herschkowitz, the other trustees. Control by such a small self-perpetuating group may not itself disqualify an organization from tax-exempt status but it presents an opportunity for abuse of the claimed tax-exempt status and it calls for careful review of the operations and finances of the organization by the Court. Church of Ethereal Joy v. Commissioner, supra at 23; Bubbling Well Church of Universal Love, Inc. v. Commissioner,74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981). The administrative record fails to rebut respondent's determination that petitioner is operated to serve the private interests of its founder, Kleinman. See, e.g., Church of the Transfiguring Spirit, Inc. v. Commissioner,76 T.C. 1 (1981); Basic Bible Church v. Commissioner,74 T.C. 846 (1980), affd. per curiam sub nom. Granzow v. Commissioner,739 F.2d 265 (7th Cir. 1984); Western Catholic Church v. Commissioner,73 T.C. 196 (1979), affd. without published opinion *359 631 F.2d 736 (7th Cir. 1980), cert. den. 450 U.S. 981 (1981). Kleinman is employed on a full time basis by the Transit Authority, and all of his compensation from such employment is donated to petitioner. He is petitioner's sole contributor. Petitioner in turn provides Kleinman and his family with food, clothing, shelter and other necessities of life. Petitioner and Kleinman share Kleinman's residence located at 3820 Maple Avenue in Brooklyn. Petitioner's two ministers, Kleinman and Engert, have no formal religious training or education and have not been ordained as ministers by any organization, other than petitioner. Petitioner has no identifiable congregation other than its three trustees. Petitioner has no program for training or ordaining ministers nor does it provide religious instruction for the young. Petitioner incurs almost no expenses for religious services. There are statements in the administrative record that petitioner conducts regular services and petitioner claims to have submitted a weekly service schedule and other literature to the Internal Revenue Service which are not contained in the administrative record. [3] However, there *360 is no evidence that any such services were attended by anyone other than petitioner's three trustees. Further, there is no evidence that petitioner undertook any evangelical or proselytizing activities in order to establish a congregation. Petitioner has performed no sacerdotal functions. Moreover, the administrative record fails to show that no part of petitioner's net earnings inures to the benefit of a private shareholder or individual. Sec. 1.501(c)(3)-1(c)(2), Income Tax Regs.The payment of reasonable salaries does not constitute prohibited inurement, but the payment of excessive salaries does. Church of Eternal Life and Liberty, Inc. v. Commissioner,86 T.C. 916, 926 (1986). Petitioner does not directly compensate Kleinman or its other trustees but an organization's net earnings may inure to the benefit of private individuals in ways other than by the direct *361 payment of excessive salaries, such as by the payment of rent and other expenses on behalf of the individual. Founding Church of Scientology v. United States,188 Ct.Cl 490, 496-497, 412 F.2d 1197, 1200 (1969), cert. denied 397 U.S. 1009 (1970). The determination of whether the aggregate amount paid by petitioner on Kleinman's behalf was reasonable or constitutes prohibited inurement is a question of fact. Unitary Mission Church of Long Island v. Commissioner,74 T.C. 507, 514 (1980), affd. per order 647 F.2d 163 (2d Cir. 1981); Bubbling Well Church of Universal Love, Inc. v. Commissioner, supra at 537-538. In this case, prohibited inurement is strongly suggested by the fact that Kleinman is the sole contributor to petitioner, is the principal recipient of petitioner's distributions and is in control of the management of petitioner's funds. Church of Eternal Life and Liberty v. Commissioner, supra at 927; Basic Bible Church v. Commissioner, supra at 857. Petitioner argues that the benefits it provides to Kleinman constitute reasonable compensation for Kleinman's *362 services and petitioner cites our decision in Alive Fellowship of Harmonious Living v. Commissioner,T.C. Memo. 1984-87. In that case, all of the organization's members worked full time for the organization and lived very modestly. They were provided with room, board, medical care, and a personal allowance which averaged $ 20 per month. They lived in cabins and trailers in a rural area. The men worked at least 9 hours a day, 6 days a week while women worked only a few less hours per week. Even though some members received more than others, the record showed that everyone who received benefits from the organization was required to work for them, and in no case did the benefits received exceed the value of the service performed. Moreover, there was no suggestion that preference was given to any particular member in the administration of the organization's assets. We found that the compensation was reasonable and that there was, accordingly, no private inurement. Petitioner's case, however, is distinguishable. Kleinman is employed on a full-time basis by the Transit Authority rather than by petitioner. The compensation received from such full-time employment *363 is contributed to petitioner but Kleinman retains full control and use of such funds, including the so-called church building fund, by reason of his control of petitioner. The administrative record shows that Kleinman devotes 25 hours per week to petitioner's affairs, 1-1/2 hours per week for services, and approximately 5 hours per month for board of directors meetings. The 25 hours per week is spent researching the "doctrine on Jewish-Buddhists." However, the administrative record fails to show Kleinman's part-time services for petitioner reasonably entitle him to the use and enjoyment of all of petitioner's net earnings. Such net earnings are, after all, Kleinman's compensation from his full-time work for the Transit Authority. Thus, based upon the record before us, we hold that petitioner has not met its burden of proving that it is operated exclusively for religious purposes, and we further hold that petitioner has not met its burden of proving that none of its funds inure to the benefit of Kleinman, a private individual. As a postscript to this opinion, we note that we have previously been called upon to consider petitioner's relationship with Kleinman. That case (docket *364 No. 16632-84) involved Kleinman's claim to be entitled to charitable contributions to the Good Friendship Temple, petitioner herein, for the taxable year ending 1981 based upon a so-called "vow of poverty." Following an evidentiary hearing, this Court rendered a bench opinion which approved respondent's determination of a tax deficiency and additions to tax. The United States Court of Appeals for the Second Circuit affirmed this Court in an unpublished opinion dated June 6, 1986 (No. 86-4014) and imposed double costs and damages on Kleinman for pursuing a "frivolous appeal." Based upon the foregoing, Decision will be entered for respondent.
Footnotes
1. Unless otherwise specified, all section references are to the Internal Revenue Code of 1954, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Kleinman is also a trustee and minister of the church of Modern Enlightenment, an organization similar to petitioner which was formed principally by Engert. The Church of Modern Enlightenment filed a petition in this Court seeking recognition of tax-exempt status as a religious organization under section 501(c)(3) (docket No. 18581-84X). That petition is the subject of our opinion at T.C. Memo. 1988-312↩. 3. In its reply brief, petitioner calls this omission from the record "an obvious ruse by the respondent to not have the literature submitted." However, as noted above, the administrative record was stipulated by petitioner and respondent, and was submitted to this Court pursuant to Rule 217(a)↩.